**In the Matter of the LIQUIDATION OF PROFESSIONAL MEDICAL INSURANCE COMPANY and Professional Mutual Insurance Company Risk Retention Group.**

No. SC 84415.

Supreme Court of Missouri, En Banc.

Jan. 14, 2003.

---

16. *Riche,* 987 S.W.2d at 337.

Martin M. Meyers, Kansas City, for appellants.

Bruce E. Baty, Kansas City, for respondent.

Kent Sellers, Kansas City, amicus curiae.

James P. Dalton, Jefferson City, amicus curiae, Corporate Insurance Consultants, Inc. and Glenn Jourdon.

Michael E. Waldeck, Kansas City, amicus curiae.

Angela K. Green, Springfield, amicus curiae Certain ESOP Participants.

RICHARD B. TEITELMAN, Judge.

Professional Medical Insurance Company (Pro Med) and Professional Mutual Insurance Company Risk Retention Group (RRG) were declared insolvent in 1994, and A.W. McPherson (receiver), deputy director of the Missouri Department of Insurance, was appointed receiver for both companies.[1] Arnold J. Wolf, D.P.M., Arthur Axelbank, M.D., and Jonathan E. Klein, M.D., (doctors) appeal the trial court's denial of their motion to intervene in the receivership proceeding to pursue a claim. They also appeal the trial court's denial of their request to appoint trustees.

After opinion by the Court of Appeals, Western District, the case was transferred to this Court. *Mo. Const. art. V, section 10.*

The trial court's judgment that the doctors cannot intervene is reversed; the trial court's judgment not to fashion a remedy for the receiver's conflict of interests is reversed; and the cause is remanded.

## Background

RRG is a mutual insurance company formed in 1987 to provide medical malpractice insurance coverage to its member physicians. Glenn Jourdon (a director) was elected president and CEO.

In 1988, Jourdon formed Pro Med, a stock property and casualty insurance company. Jourdon also served as a director and president of Pro Med. RRG contributed $2,000,000 to Pro Med in return for 800,000 shares of Pro Med common stock.

In 1989, Pro Med entered into an assumption reinsurance agreement with RRG, under which Pro Med agreed to assume all of RRG's business. RRG contributed $10,000,000 to Pro Med in exchange for 200,000 shares of preferred Pro Med stock.

In 1991, RRG sold all of its common stock in Pro Med to Corporate Insurance Consultants (CIC) for $2,000,000. CIC was a holding company of which Jourdon was the sole shareholder. CIC borrowed the $2,000,000 from Pro Med.

In 1992, CIC sold 416,000 of its 800,000 Pro Med shares to an employee stock ownership plan and its employee participants (ESOP) for $1,078,786.89. CIC's $2,000,000 note to Pro Med was canceled and replaced by a note from ESOP for $1,078,786.89 and a note from CIC for $960,000. CIC entered into an agency agreement with Pro Med for CIC to receive a commission on every policy sold by Pro Med.

In 1994, both RRG and Pro Med were declared insolvent, and the same receiver was appointed for both companies.

By 1998, it became apparent that both estates would have substantial surpluses to be distributed to their ownership classes.

In February 1999, the receiver reported his findings and recommendations to the trial court. The receiver presented two plans for the complete liquidation and distribution of surplus for the Pro Med and RRG estates. The receiver has made distributions from surplus for both estates, but funds remain.

The doctors, as members of RRG, filed a motion to intervene in the receivership proceedings for the purpose of filing a claim in the nature of a shareholder derivative action for RRG against Pro Med. The doctors alleged unlawful conduct in connection with the transaction in which Pro Med financed CIC's purchase of Pro Med's common stock from RRG. The receiver

1. Scott B. Lakin has since been named director of the Missouri Department of Insurance, and therefore became the receiver of both receiverships.

had refused to pursue such a claim. At a hearing held before the trial court in October 2000, the receiver acknowledged that he had a possible conflict of interests regarding protection of the doctors' rights.

In December 2000, the doctors filed an application for appointment of trustees, asking the trial court to fashion a remedy for alleged conflicts of interests on the part of the receiver.

In a judgment dated December 20, 2000, the trial court denied the doctors' motion to intervene and application for appointment of trustees. The doctors appeal both aspects of the trial court's judgment.[2]

## Intervention

"Denial of a motion for leave to intervene as a matter or right under Rule 52.12 will be affirmed by an appellate court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *State ex rel. Nixon v. American Tobacco Co., Inc.*, 34 S.W.3d 122, 126 (Mo. banc 2000); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Rule 52.12(a), "Intervention of Right," provides:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

While a proposed intervenor normally "asks too much when it asks to be made a party to the receivership itself, ...

intervention in particular proceedings in which the receiver may be involved ... should be allowed with considerable liberality." *Ainsworth v. Old Security Life Insurance Company*, 685 S.W.2d 583, 586 (Mo.App.1985). Here, the doctors seek to intervene solely with respect to a particular proceeding that they seek to commence. Therefore, the doctors seek to expand the holding of *Ainsworth* to include intervention for the specific purpose of the commencement of a proceeding involving the receiver, rather than mere intervention in proceedings in which the receiver is already involved.

In *American Tobacco*, this Court held:

In the absence of a statute conferring an unconditional right of intervention, an applicant seeking intervention must file a timely motion and show three elements: (1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest. The proposed intervenor carries the burden of establishing the presence of all three elements required for intervention as a matter of right. When an applicant satisfies these elements, however, the right to intervene is absolute and the motion to intervene may not be denied.

*American Tobacco*, 34 S.W.3d at 127 (citations omitted).

First, the doctors have an interest relating to the property that is the subject of the action. Generally, "interest" means a concern, more than mere curiosity, or academic or sentimental desire. *In the Matter of Trapp*, 593 S.W.2d 193, 204 (Mo. banc 1980). One interested in an

---

**2.** Before the trial court, the receiver did not oppose the doctors' motion to intervene. On

appeal, the receiver argues in support of both aspects of the trial court's judgment.

action is one who is interested in its outcome because he or she has a legal right that will be directly affected or a legal liability that will be directly enlarged or diminished. *Id.* The doctors established such an interest both in the property being administered by the receivership estate and in the claims the doctors sought to assert through intervention. The doctors would gain by direct operation of any judgment obtained on the claims they seek to assert by intervention.

Second, the doctors' ability to protect their interest is impeded. The doctors' claims must be in the nature of a shareholder derivative action, and they would be against both RRG (because it would be a shareholder derivative action) and Pro Med. If such claims were filed outside of the liquidation proceeding, the receiver, in his dual capacity as receiver for both RRG and Pro Med, would be shielded from such claims by section 375.1188.[3] The doctors have no legal right to assert their claims other than by means of intervention in the receivership proceeding to assert the claims.

Third, the existing party is inadequately representing the doctors' interest. The same individual serves as the receiver of both the RRG and Pro Med receivership estates. The existing party (the receiver) cannot be expected to bring a claim against himself in order to assert the doctors' claims.[4]

■ It is not a bar to intervention that the doctors seek to intervene to commence a proceeding. A party that has satisfied the three elements described in *American Tobacco* may intervene for the purpose of the creation of a proceeding just as a party may intervene to participate in an existing proceeding. *American Tobacco,* 34 S.W.3d at 127.

The doctors are entitled to intervene as a matter of right to pursue a claim consisting of a shareholder derivative action by and on behalf of the members of RRG against both RRG and Pro Med. The trial court's judgment that the doctors cannot intervene is reversed.

### Appointment of trustee

■ This Court will affirm the trial court's judgment as to the appointment of a trustee unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Statutory interpretation is an issue of law that this Court reviews de novo. *Blakely v. Blakely,* 83 S.W.3d 537, 540 (Mo. banc 2002).

The relatively rare fact that the same individual serves as the receiver of both the RRG and Pro Med receivership estates creates potential for conflicts of interests. The doctors have alleged that the receiver has several conflicts of interests, including those caused by potential claims that RRG may have against Pro Med.

Section 375.710 provides:

In case of any conflict of interests on any matter, or concerning the enforcement or settlement of any conflicting claims between two or more insurers, the settlement and winding up of whose affairs shall be under the charge of the

---

**3.** All statutory references are to RSMo 2000.

**4.** The remedy proposed by the trial court would not allow the doctors to fully pursue their claims based upon breach of fiduciary duties owed to Pro Med, and the claims would be under the terms of an assignment tendered by the receiver, who reserved the right to withdraw the assignment at a later date. These constitute substantial impediments to the doctors' ability to protect their interests, whereas intervention would not.

director, it shall be the duty of the director, and the right of any person interested in any of the insurers to report the fact of conflict and the question or questions involved to the court in which any of the causes is pending, and such court, thereupon, shall have power to appoint a trustee, to have charge and control of the interests of any of the insurers as regards the settlement or enforcement of its claims in respect to the matter in controversy, or to make such other orders providing for the settlement, adjustment or enforcement of the rights of the insurer in the matter as to the court shall seem best adapted to the protection of the rights of all.

When a receiver acts on behalf of two contractually related entities, the court must be especially sensitive to any reported conflicts of interests. Regardless of whether a conflict of interests is reported to the court inconveniently late in the proceedings, a court cannot refuse to fashion appropriate protection of the rights of all interested persons.

In this case, the receiver suspected that he might be operating under a conflict of interests, and the doctors asserted several major conflicts of interests. At a minimum, the doctors' potential derivative claims create in the receiver a conflict of interests. The court should fashion a remedy for the conflict of interests on the part of the receiver that the court finds best adapted to the protection of the rights of all interested persons.

The trial court's judgment not to fashion a remedy for the receiver's conflict of interests is reversed.

The cause is remanded.

All concur.