

# In the
# Missouri Court of Appeals
# Western District

IN THE MATTER OF THE )
ADOPTION OF: C.T.P.; )
K.L., ) **WD77435**
)
    **Appellant,** ) **OPINION FILED:**
) **December 16, 2014**
v. )
)
A.M. AND R.M., JR., )
)
    **Respondents.** )

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon E. Beetem, Judge

Before Division Three:  Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

This case requires us to address whether section 452.375.5(5)[1] permits a person asserting third-party custody rights to intervene as a matter of right in an adoption proceeding.  K.L. appeals from the trial court's order and judgment which, based on standing, (i) dismissed K.L.'s petition seeking a determination of third-party child custody rights, and (ii) denied K.L.'s motion to intervene as a matter of right in a separate adoption proceeding.

---

[1]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

The trial court's order and judgment is not final for purposes of appeal insofar as it dismissed K.L.'s petition seeking a determination of third-party child custody rights because that petition was consolidated with the adoption proceeding, and the order and judgment did not resolve all claims as to all parties in the consolidated action.

The trial court's order and judgment is final for purposes of appeal insofar as it denied K.L.'s motion to intervene as a matter of right in the adoption proceeding. Because a child custody determination is not in issue in an adoption proceeding, K.L. has not established an interest in the subject matter of the adoption proceeding that permits her to intervene as a matter of right.

K.L.'s appeal of the order and judgment dismissing her third-party child custody petition is dismissed for want of a final judgment. The trial court's denial of the motion to intervene as a matter of right is affirmed. This matter is remanded to the trial court for further proceedings consistent with this Opinion.

### Factual and Procedural History[2]

A.M. and K.L. began a committed relationship in 2002. In 2007, A.M. underwent artificial insemination using an anonymous donor's sperm. A female child ("Child") was born in February 2008. The Child suffers from severe medical problems as a result of complications during her birth and requires specialized care. K.L. contends that she quit her job to stay home with the Child and that she served as the Child's primary caregiver for four years. According to K.L., the couple separated in the spring of 2011, around the

---

[2]The factual background is drawn from allegations in A.M. and R.M.'s petition seeking stepparent adoption, K.L.'s petition for child custody, and K.L.'s motion to intervene and oppose the petition for stepparent adoption.

time a medical malpractice lawsuit involving the Child was settled and a multi-million dollar trust was established for the benefit of the Child. K.L. contends that A.M. began refusing to allow K.L. to have contact with the Child in the fall of 2011 and that A.M. cut off all contact between K.L. and the Child in July 2012.

A.M. married R.M. in August 2012.[3] On September 21, 2012, A.M. and R.M. filed a petition seeking stepparent adoption and to change the surname of the Child ("Adoption Petition"). The Adoption Petition alleged that A.M. is the biological mother of the Child and that the identity of the Child's biological father is unknown. The Adoption Petition further alleged that the Child had resided with and has been in the care, custody, and control of A.M. and R.M. since December 2011. The Adoption Petition acknowledged that K.L. believes she has some type of claim to custody of the Child, parenting time with the Child, or both, though A.M. and R.M. dispute the claim. A.M. and R.M. forwarded a stamp-filed copy of the Adoption Petition to K.L.'s attorney.

K.L. took two actions in response to the Adoption Petition. First, K.L. filed an original proceeding seeking an award of joint legal and physical custody over the Child to K.L. and A.M. ("Child Custody Petition"). The Child Custody Petition acknowledged that A.M. is the biological mother of the Child and that K.L. has no biological relationship to the Child. The Child Custody Petition alleged, however, that K.L. "has acknowledged by her actions and statements to third-parties that she is [the] adoptive mother of the [Child]," and that "[b]oth [K.L. and A.M.] have acknowledged by their

---

[3]K.L. and A.M. are females and R.M. is a male. The parties' gender is not material to our analysis. This case requires us to analyze the extent to which section 452.375.5(5) supports intervention as a matter of right in an adoption proceeding, an issue that is gender neutral.

3

actions and statements to third-parties that they intend to raise the minor child as co-equal parents." The Child Custody Petition alleged that K.L. is entitled to third-party custody of the Child pursuant to section 452.375.5(5).[4] The Child Custody Petition does not allege that A.M. is unfit or an inappropriate parent, but appears instead to rely on a generalized assertion regarding the welfare and best interests of the Child given K.L.'s historical relationship with the Child.[5]

Second, K.L. filed a motion to intervene as a matter of right in the adoption proceeding pursuant to section 452.375.5(5) ("Motion to Intervene"). The Motion to Intervene alleged that K.L. and A.M. had jointly agreed to conceive a child via artificial insemination and had agreed that K.L. would adopt the child born as a result of the

---

[4]Sections 452.300 to 452.415 are known collectively as the "Uniform Marriage and Divorce Act." Section 452.305 provides that assuming the court otherwise has the authority to do so (the subject of the Uniform Child Custody and Jurisdiction and Enforcement Act, sections 452.700 to 452.930), a judgment of dissolution of marriage must "consider[] and ma[ke] provision[s] for child custody." Section 452.375.2 directs that "[t]he court shall determine custody in accordance with the best interests of the child." Section 452.375.5 provides that:

> Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:
> (1)      Joint physical and joint legal custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint physical and joint legal custody award. The residence of one of the parents shall be designated as the address of the child for mailing and educational purposes;
> (2)      Joint physical custody with one party granted sole legal custody. The residence of one of the parents shall be designated as the address of the child for mailing and educational purposes;
> (3)      Joint legal custody with one party granted sole physical custody;
> (4)      Sole custody to either parent; or
> *(5)      Third-party custody or visitation:*
> *(a)      When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child. Before the court awards custody, temporary custody or visitation to a third person under this subdivision, the court shall make that person a party to the action.*
> *(b)      Under the provisions of this subsection, any person may petition the court to intervene as a party in interest at any time as provided by supreme court rule.*

(Emphasis added.)

[5]During oral argument, K.L.'s counsel confirmed that K.L. is not contending that A.M. or R.M. are unfit to serve as parents or custodians for the Child but instead is contending that the welfare of the Child and the best interests of the Child support awarding K.L. third-party custody rights and visitation with the Child. We express no opinion regarding the sufficiency of the allegations in the Child Custody Petition for this purpose.

4

process. The Motion to Intervene alleged that an adoption was put on hold solely because of the medical emergencies surrounding the Child's birth, and K.L. alleged that she quit her job to attend to the Child's specialized care requirements. The Motion to Intervene further alleged that K.L. and A.M. raised the Child as co-parents until their relationship ended. K.L alleged that her interest in securing third-party custody rights with the Child supported intervention as a matter of right in the adoption proceeding. K.L. alleged that if R.M. is permitted to adopt the Child, she will be "legally barred from petitioning for custody in the future." As required by Rule 52.12(a), K.L. alleged that she had filed the Child Custody Petition seeking joint custody of the Child, suggesting that pleading would be her "claim" if intervention was granted. Neither the Motion to Intervene nor the Child Custody Petition allege that K.L. has a superior right to adopt the Child.

A.M. filed a motion to dismiss the Child Custody Petition ("Motion to Dismiss") for lack of standing. The Motion to Dismiss argued that 452.375.5(5) applies only to permit the determination of third-party custody issues when custody of a minor child born of a marriage is properly before the court for determination in connection with a dissolution proceeding. The Motion to Dismiss thus contended that the trial court had no statutory authority to determine third-party custody of the Child pursuant to section 452.375.5(5) because A.M. and K.L. were never married and the Child was not born of a marriage. Thus, the Motion to Dismiss asserted that K.L. had no standing to bring an

5

original proceeding to determine third-party custody of the Child under section 452.375 and that the Child Custody Petition failed to state a claim.[6]

A.M. and R.M. also opposed K.L.'s Motion to Intervene in the adoption proceeding, making similar allegations to those raised in the Motion to Dismiss. A.M. and R.M. also noted that despite K.L.'s references to herself as the "adoptive" mother of the Child, K.L. has never been declared legally to be the adoptive mother of the Child. They also argued that an interest in determining custody rights will not support intervention as a matter of right in an adoption proceeding because it is not a legal interest that will be directly impaired by an adoption.

K.L. filed a motion to consolidate the adoption proceeding and the child custody proceeding pursuant to Rule 66.01 "into a single proceeding on the merits of the legal and equitable rights of the three putative parents of the [Child]." The motion was unopposed by A.M. and R.M. and by the Guardian Ad Litem who had been appointed for the Child. The trial court entered an order consolidating the actions and set deadlines to complete briefing on the pending Motion to Dismiss and Motion to Intervene.

On February 13, 2014, the trial court issued its order and judgment ("Judgment"). The Judgment both granted the Motion to Dismiss K.L.'s Child Custody Petition and denied K.L.'s Motion to Intervene in the adoption proceeding for lack of standing.

K.L. appeals.

---

[6]The Motion to Dismiss also argued that there were "no other viable legal theories for [K.L.] to state a claim for relief under Missouri law." K.L. concedes on appeal that the Child Custody Petition did not attempt to assert any theory other than rights afforded by section 452.375.5(5) as the basis for an award of third-party custody.

6

## Finality of the Judgment for Purposes of Appeal

Before we examine the merits of K.L.'s points on appeal, we "must determine whether jurisdiction is proper, regardless of whether any of the parties raised the issue."[7] *Crest Constr. II, Inc. v. Hart*, 439 S.W.3d 246, 249 (Mo. App. W.D. 2014) (internal quotation marks omitted). "Generally an appellate court only has jurisdiction over final judgments disposing of all issues and parties, which leave nothing for future determination." *Id.* (internal quotation marks omitted). An exception to the final judgment rule is found in Rule 74.01(b), which provides that "[w]hen more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." If the judgment does not either resolve all issues as to all parties or expressly designate that "there is no just reason for delay," the judgment is not final for purposes of appeal and must be dismissed. *Crest Constr. II*, 439 S.W.3d at 249. Application of these settled principles to this case is influenced by the trial court's order of consolidation.

K.L. filed an unopposed motion to consolidate the Adoption Petition and the Child Custody Petition "into a single proceeding on the merits of the legal and equitable rights of the three putative parents of the [Child]." The motion to consolidate asserted that consolidation was proper pursuant to Rule 66.01 because "[t]here are common parties in

---

[7]None of the parties have raised the issue of whether the Judgment is final in their briefs or during oral argument. Nevertheless, the existence of a final judgment is a prerequisite to appellate jurisdiction so that we must consider the issue *sua sponte*. *Gerken v. Mo. Dep't of Soc. Servs.*, 415 S.W.3d 734, 437 (Mo. App. W.D. 2013).

both cases,[8] the questions of law and fact deal with rights to custody and/or visitation with the same minor child,[9] and the matters are both before the Family Court Division."[10] The trial court ordered consolidation without further elaboration.

"[W]hen a trial court employs the term 'consolidation,' its effect on the separate identity of the actions is not immediately clear." *Woods v. Cory*, 149 S.W.3d 912, 914 (Mo. App. S.D. 2004).

> The phrase "consolidation of actions" has been used by courts in three different senses. One application of the term means the staying of proceedings in one or more actions pending the outcome of proceedings in another action. Used in another sense, the phrase refers to the trial of several actions together. Actions which are consolidated in this sense remain separate actions with respect to docket entries, verdicts, judgments, and all aspects except trial. Finally, the term "consolidation" may mean the uniting of two or more previously distinct actions into one. Actions which have been consolidated in this sense lose their independent and separate existence, and only one judgment is rendered in the single action into which they have been combined.

*Moss v. Home Depot USA, Inc.*, 988 S.W.2d 627, 630 (Mo. App. E.D. 1999) (internal quotation marks omitted). Determining the type of consolidation ordered by a trial court requires an examination of the record to determine whether the actions remained separate in all aspects except trial or whether the two actions were merged into a single action. *See Woods*, 149 S.W.3d at 914.

The motion to consolidate sought to consolidate the Adoption Petition and the Child Custody Petition into "a single proceeding." The trial court granted the motion

---

[8]Rule 66.01(a) gives the trial court discretion to consolidate civil actions that have the same plaintiff and defendant or the same plaintiff and several defendants into a single civil actions.

[9]Rule 66.01(b) gives the trial court discretion to consolidate civil actions "involving a common question of law or fact."

[10]Rule 66.01(c) gives the trial court discretion to consolidate civil actions pending in the same family court division if the civil actions involve the same or different members of the same family.

8

based on the parties' consent. Thereafter, docket entries under the case number originally assigned to the Child Custody Petition ceased, and all further proceedings with respect to the Child Custody Petition were docketed under the case number assigned to the Adoption Petition. The captions and case numbers for the two cases were consolidated on all subsequent pleadings, including the Judgment and in this appeal. Plainly, the trial court's order of consolidation united the Child Custody Petition and the Adoption Petition into one action. As a result, the actions lost "their independent and separate existence, and only one judgment is [to be] rendered in the single action into which they have been combined." *Moss*, 988 S.W.2d at 630.

In *City of Kansas City v. Woodson*, we considered the finality of a judgment disposing of one of two consolidated actions. 130 S.W.3d 7, 11 (Mo. App. W.D. 2004). There, the trial court consolidated an action filed by the City of Kansas City against a landowner with an action filed by the Director of Collections of Jackson County against the same landowner. *Id.* at 9. The trial court thereafter entered summary judgment in favor of the City, and the landowner appealed the entry of summary judgment. *Id.* We dismissed the appeal because the judgment was not final as it did not dispose of the County's claims against the landowner. *Id.* at 11. We explained: "[B]ecause the judgment from which the [landowner] appeals does not dispose of all the claims against all the parties in the underlying consolidated civil action and fails to make 'an express determination that there is no just reason for delay,' the judgment is not final and appealable, and must be dismissed for a lack of jurisdiction." *Id.* (quoting Rule 74.01(b)).

9

Here, the Judgment dismissed K.L.'s Child Custody Petition and denied K.L.'s Motion to Intervene in the adoption proceeding.[11] The Judgment did not resolve the claims asserted by A.M. and R.M. in the Adoption Petition.[12] The Judgment thus did not resolve all issues as to all parties in the consolidated action. Nor did the Judgment include a Rule 74.01(b) certification,[13] the essential precursor to our authority to entertain an interlocutory appeal. Barring the applicability of another exception to the final judgment rule, this appeal must be dismissed.

There are limited circumstances where an appellate court is authorized to entertain an appeal from an order that does not resolve all issues as to all parties, even in the absence of Rule 74.01(b) certification. One such circumstance is implicated by the Judgment. "'[T]he denial of a motion to intervene as a matter of right under Rule 52.12(a) is a final and appealable judgment.'" *State ex rel. Ideker, Inc. v. Grate*, 437 S.W.3d 279, 283 (Mo. App. W.D. 2014) (quoting *Eckhoff v. Eckhoff*, 242 S.W.3d 466, 469 (Mo. App. W.D. 2008)). That is because, a "'movant cannot appeal from the judgment'" in a case where "'the movant asserts that she may be legally bound or

---

[11]The trial court's order consolidating the Adoption Petition and the Child Custody Petition into a single civil action had the practical effect of mooting K.L.'s Motion to Intervene in the adoption proceeding. However, when the trial court thereafter dismissed the Child Custody Petition, the relevance of the still pending Motion to Intervene was restored because without intervention, K.L. would have had no right to present evidence or to otherwise participate in disposition of the Adoption Petition. The trial court thus properly proceeded to rule on the pending Motion to Intervene when it determined to grant the Motion to Dismiss.

[12]The docket sheet in the Legal File indicates that following the Judgment, the trial court scheduled an "adoption hearing." Case.net reflects that the Guardian Ad Litem sought a continuance of the adoption hearing based on the best interests of the Child given the pendency of this appeal. That motion was granted, suggesting that resolution of the Adoption Petition has been effectively stayed by the trial court until resolution of this appeal.

[13]The trial court inserted a footnote in its Judgment stating: "Although an order was entered in November of 2012 consolidating these cases, the Court wishes to make clear that this Order and Judgment resolves both cases." This is not the certification required by Rule 74.01(b) and is not self-effectuating to bestow authority on this Court to entertain an interlocutory appeal. Moreover, the statement is inaccurate, as the Adoption Petition was not resolved by the Judgment. Further, the footnote was plainly not an order to "de-consolidate" the cases, as the cases have remained procedurally united as a single action.

prejudiced by'" the judgment "'unless she is allowed to intervene.'" *Id.* (quoting *Eckhoff*, 242 S.W.3d at 469). Thus, "'the order denying intervention has the degree of definiteness which supports an appeal therefrom.'" *Id.* (quoting *State ex rel. Reser v. Martin*, 576 S.W.2d 289, 290-91 (Mo. banc 1978)).

K.L.'s Motion to Intervene sought to intervene in the adoption proceeding as a matter of right pursuant to Rule 52.12(a).[14] The trial court's denial of the Motion to Intervene is a final appealable judgment.

We are thus left in an unusual procedural position. The trial court's grant of the Motion to Dismiss K.L.'s Child Custody Petition is not a final appealable judgment. The trial court's denial of K.L.'s Motion to Intervene in the adoption proceeding is a final appealable judgment. K.L.'s appeal of the grant of the Motion to Dismiss is dismissed for want of a final judgment. We will entertain, however, K.L.'s appeal of the denial of her Motion to Intervene.

## Standard of Review

We recently described our standard of review of the denial of a motion to intervene in *In re D.S.K.*, 428 S.W.3d 655, 657 (Mo. App. W.D. 2013):

> We will affirm the denial of a motion to intervene unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Motions to intervene as a matter of right, like the one before us, are typically decided based upon the motion, pleadings, counsel's arguments, and suggestions in support or opposition to the motion. The circuit court usually does not hear any

---

[14]The Motion to Intervene alternatively sought to intervene in the adoption proceeding permissively as permitted by Rule 52.12(b). "'An order denying a motion to intervene under Rule 52.12(b), a 'permissive intervention,' is not a final judgment, and [is] therefore not reviewable on [interlocutory] appeal.'" *In re M.M.P.*, 10 S.W.3d 195, 197 (Mo. App. W.D. 2000) (quoting *In re S.R.L.*, 984 S.W.2d 558, 559 (Mo. App. S.D. 1999)). Appropriately, K.L. has not claimed any error in this appeal based on her request to permissively intervene.

11

evidence or make any declarations of law. Instead, the decision to grant or deny the motion is one involving the application of law.

(Internal citations and quotations omitted.)

Though the denial of a motion to intervene does not usually involve a declaration of law, here the trial court expressly denied the Motion to Intervene because it concluded that K.L. did not have standing to assert a claim for third-party custodial rights. The issue of standing is a threshold question in that "[a] party cannot obtain relief from a court if that party lacks standing." *Exec. Bd. of Mo. Baptist Convention v. Carnahan*, 170 S.W.3d 437, 445 (Mo. App. W.D. 2005). We review a trial court's determination that a party lacks standing *de novo*. *Mo. Pub. Serv. Comm'n v. Oneok, Inc.*, 318 S.W.3d 134, 137 (Mo. App. W.D. 2009). We determine whether a person has standing from a review of the allegations in the pleadings along with any other undisputed facts revealed by the record. *White v. White*, 293 S.W.3d 1, 8 (Mo. App. W.D. 2009) (noting that standing is determined from the allegations in a petition and from other undisputed facts revealed in the record).

### Analysis

K.L. asserts four points on appeal.[15] In her first three points, K.L. argues, respectively, that she had standing to intervene as a matter of right in the adoption proceeding on the theories of equitable estoppel, third-party custody pursuant to section 452.375.5(5), and equitable or *de facto* parentage. In her fourth point, K.L. asserts that

---

[15]All of K.L.'s points on appeal make dual reference to the trial court's grant of the Motion to Dismiss and its denial of the Motion to Intervene. For reasons we have explained, K.L.'s claims of error in connection with the trial court's grant of the Motion to Dismiss have been dismissed for want of a final judgment.

the denial of her Motion to Intervene based on a lack of standing violates her constitutional rights to due process and equal protection.

K.L.'s Motion to Intervene did not seek to intervene in the adoption proceeding based on either the theory of equitable estoppel or equitable parentage, the subjects of points one and three on appeal. Nor did the Motion to Intervene assert that intervention was required in order to protect K.L.'s constitutional rights to due process and equal protection, the subject of point four on appeal. K.L.'s first, third, and fourth points on appeal thus preserve nothing for our review, as they claim error in denying the Motion to Intervene on the basis of theories not presented to the trial court. *White*, 293 S.W.3d at 8 (noting that standing is determined from the pleading asserting the claim and from other undisputed facts established on the record). Points one, three, and four are denied.

The Motion to Intervene did argue that K.L. had standing to intervene as a matter of right in the adoption proceeding pursuant to section 452.375.5(5), the subject of K.L.'s second point on appeal. Accordingly, K.L.'s second point on appeal is preserved for our review.[16]

**Point Two**

K.L.'s second point on appeal alleges that the trial court erred in denying the Motion to Intervene because she is entitled to intervene as a matter of right pursuant to Rule 52.12(a) since she has a legal interest in determining third-party custody of the Child pursuant to section 452.375.5(5). We must first determine whether K.L. has

---

[16]A.M. and R.M. acknowledged in their Brief that K.L.'s second point on appeal is preserved for our review. However, during oral argument, counsel for A.M. and R.M. took the position that this was an erroneous concession, and that the second point on appeal was not preserved for our review. Counsel's argument is disingenuous, is plainly without merit, and has been disregarded.

satisfied the essential requirements of Rule 52.12(a) before we need address whether section 452.375.5(5) creates a legal interest K.L. is entitled to assert.

## A. Intervention as a Matter of Right Pursuant to Rule 52.12(a)

Rule 52.12 provides for intervention as a matter of right as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene or (2) *(i)* when the applicant claims an interest relating to the property or transaction that is the subject of the action and *(ii)* the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, *(iii)* unless the applicant's interest is adequately represented by existing parties.

(emphasized text added and highlighted for clarification). K.L. does not claim that a statute of this state confers an unconditional right to intervene as permitted by Rule 52.12(a)(1),[17] but instead relies on Rule 52.12(a)(2). K.L. "'carries the burden of establishing the presence of all three elements required for intervention as a matter of right.'" *Prentzler v. Carnahan*, 366 S.W.3d 557, 561 (Mo. App. W.D. 2012) (quoting *Kinney v. Schneider Nat'l Carriers, Inc.*, 200 S.W.3d 607, 611 (Mo. App. W.D. 2006)). "'[A] motion to intervene as of right under Rule 52.12(a)(2) may properly be denied if even one of these three elements is not established.'" *Id.* (quoting *Kinney*, 200 S.W.3d at 611).

---

[17]Although K.L. relies on section 452.375.5(5) as the source of the legal interest she seeks to protect by intervention in the adoption proceeding, that statute does not authorize an unconditional right to intervene but instead authorizes intervention as permitted by Supreme Court Rule. Section 452.375.5(5)(b). A.M. and R.M. contend that section 452.375.5(5) applies only to permit intervention by third-parties into dissolution proceedings where child custody is properly before the court for determination. K.L. contends that section 452.375.5(5) creates an independent basis for third-parties to seek custody determinations in an original proceeding, and that as a result, section 452.375.5(5) permits a third-party to seek intervention in any proceeding where child custody is at issue, including an adoption proceeding. For reasons we later explain, we need not resolve this issue.

14

"An interest, for purposes of intervention as of right, 'means a concern, more than mere curiosity, or academic or sentimental desire.'" *Allred v. Carnahan*, 372 S.W.3d 477, 484 (Mo. App. W.D. 2012) (quoting *In re Liquidation of Prof'l Med. Ins. Co.*, 92 S.W.3d 775, 778 (Mo. banc 2003)). "'An interest necessary for intervention as a matter of right does not include a mere, consequential, remote or conjectural possibility of being affected as a result of the action, but must be a direct claim upon the subject matter such that the intervenor will either gain or lose by direct operation of judgment.'" *Id*. (quoting *State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 128 (Mo. banc 2000)). "'To intervene in an action as a matter of right, the intervenor's interest in the action must be a direct and immediate claim to, and have its origin in, the demand made . . . by one of the parties to the original action.'" *Id.* (quoting *In re Clarkson Kehrs Mill Transp. Dev. Dist.*, 308 S.W.3d 748, 753 (Mo. App. E.D. 2010)).

The Motion to Intervene alleges that K.L. has an interest in the adoption proceeding because she desires third-party custodial rights over the Child. A.M. and R.M. concede in the Adoption Petition that K.L. "believes she has some type of claim to custody and/or parenting time with the [C]hild."[18] To intervene as a matter of right, however, it is not enough that K.L. claims an interest in determining custody and visitation rights with the Child. Instead, K.L. must establish that her interest in determining custody and visitation is a direct claim upon the subject matter of the

---

[18]According to the Adoption Petition, this assertion was included because it was required by "section 452.700, *et seq*." Section 452.780 requires a court in a child custody proceeding to be advised of other persons not a party to the proceeding who claim a right to legal or physical custody. However, section 452.710 expressly provides that the provisions of sections 452.700 to 452.930, otherwise known as the Uniform Child Custody Jurisdiction and Enforcement Act, do not apply to adoption proceedings.

adoption proceeding that will be lost by direct operation of a judgment permitting R.M. to adopt the Child.  K.L. has not met this burden.

## B.  The Determination of Custody Rights Is Not In Issue in an Adoption Proceeding

"The meaning of the term 'adopted' is well settled."  *In re Estate of R.M.*, 356 S.W.3d 250, 252 (Mo. App. E.D. 2012).

> When a child is adopted . . . all legal relationships and all rights and duties between such child and his natural parents (other than a natural parent who joins in the petition for adoption as provided in section 453.010) shall cease and determine.  Such child shall thereafter be deemed and held to be for every purpose the child of his parent or parents by adoption . . . .

Section 453.090.1.  Adoption is thus "a judicial act which creates a complex set of legal relationships similar to those existing between a natural parent and child.  One of those legal relationships is that of 'custody.'"  *In re Estate of R.M.*, 356 S.W.3d at 252 (citations omitted).[19]

Because an adoption establishes a parent-child relationship for all purposes, the statutory procedures for adoptions set forth in Chapter 453 require service of an adoption petition upon persons whose *existing* parental or custodial rights will be severed by adoption.  Specifically, section 453.060.1 requires service of a summons and a copy of the adoption petition[20] on:

> (1)     Any person, agency, organization or institution whose consent to the adoption is required by law unless such consent is filed in court;

---

[19]The court in *In re Estate of R.M.* cites *State ex rel. M.L.H. v. Carroll*, 343 S.W.2d 622, 626 (Mo. App. 1961) for the proposition therein stated that "[t]he matter of the lawful and actual custody of a child is an inherent part of any adoption proceeding."  356 S.W.3d at 252.  This holding followed discussion of the fact that the adoption statutes authorize transfer of the custody of a child under limited circumstances to the proposed adoptive parents. *M.L.H.*, 343 S.W.2d at 626-27; *see* section 453.110.

[20]Service may be had constructively if it cannot be secured personally.  Section 453.060.3.

16

(2) Any person whose consent to the adoption, according to the allegation of the petition for adoption, is not required for the reasons set forth in subdivision (6) or (7) of section 453.040[21];

(3) Any person, agency, organization or institution, within or without the state, having custody of the child sought to be adopted under a decree of a court of competent jurisdiction even though its consent to the adoption is not required by law;

(4) The legally appointed guardian of the child;

(5) Any person adjudicated . . . to be the father of the child;

(6) Any person who has timely filed a notice of intent to claim paternity of the child pursuant to section 192.016 or an acknowledgment of paternity pursuant to section 193.087.

Though each of the aforesaid persons or entities must be served,[22] a court in an adoption proceeding is empowered to "act upon the petition without the consent of any party, except that of a parent whose consent is required by sections 453.030 to 453.050,[23] and the judgment is binding on all parties so served. Any such party has the right to appeal from the judgment . . . ." Section 453.060.4. A judgment of adoption requires a court to determine that "[i]t is fit and proper that such adoption should be made." Section 453.080.1(8).

Chapter 453 does not authorize a trial court to determine custody disputes, and makes no provision for the entry of child custody or visitation orders other than the transfer of custody of a child to proposed adoptive parents to facilitate adoption as

[21]Those subdivisions address parents with mental conditions rendering them unable to knowingly provide a child with necessary care, custody or control, and parents who abandon a child for a specific period of time depending on the child's age.

[22]Though K.L. was informally provided with a courtesy copy of the Adoption Petition, she was not served with the Adoption Petition, nor was she required to be by section 453.060.1.

[23]These sections address the consent required from the person to be adopted, from the mother of the child, and from the man who is presumed by law to be the father of the child or the man who has timely filed an action to establish paternity or the with the putative father registry.

17

permitted by section 453.110. This is consistent with the fact that an adoption, by its nature, permanently severs "all legal relationships and all rights and duties between such child and his natural parents," including custodial rights. Section 453.090.1. Stated differently, an adoption proceeding is not a child custody determination wherein competing custodial rights to a child are weighed and determined by the court. Instead, an adoption proceeding requires a court to determine whether the creation of a parent-child relationship is in the best interests of a child. *See In re Adoption of R.S.*, 231 S.W.3d 826, 830-31 (Mo. App. S.D. 2007) (holding that "[w]hile an adoption certainly entails the adoptive parents receiving both legal and physical custody of the child, it is different [from] granting custody to a parent or a third party").

Consistent with this observation, sections 452.700 to 452.930, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), defines a "child custody determination" in pertinent part as:

> [A] judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, or modification order.

Section 452.705(3). The UCCJEA defines a "child custody proceeding" wherein "child custody determinations" may be made in pertinent part as:

> [A] proceeding in which legal custody, physical custody, or visitation with respect to a child *is an issue*. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence *in which the issue may appear*.

Section 452.705(4) (emphasis added). Notably absent from this definition are adoption proceedings controlled by sections 453.005 to 453.170, wherein no authority is vested in

18

a court to enter custodial or visitation orders of the nature described in section 452.705(3). In fact, section 452.710(1) of the UCCJEA expressly provides that "Sections 452.700 to 452.930 shall not govern . . . [a]n adoption proceeding."

It follows that as child custody determinations are not in issue in an adoption proceeding, K.L's. interest in determining her custodial and visitation rights with the Child is not the type of interest that will support intervention as a matter of right in the adoption proceeding. K.L.'s claim that section 452.375.5(5) entitles her to custody and visitation rights with the Child, whatever its legal merit, will not be lost by direct operation of a judgment permitting R.M. to adopt the Child. That is because parental custodial rights are not absolute. "The general rule [is] that natural parents have a primary right to the custody of their children . . . ." *In Interest of C.L.M.*, 625 S.W.2d 613, 617 (Mo. banc 1981). "When in conflict, however, the rule favoring parental custody is superceded by the concerns of the state for the child's welfare." *Id.* Thus, should R.M. adopt the Child, any future court will remain free to make third-party child custody and visitation determinations involving the Child in a proceeding where such determinations are authorized by law.

The result we reach today is not novel. We have previously affirmed the denial of a motion to intervene as a matter of right in an adoption proceeding where the intervenor expressed an interest in determining custody and visitation rights. In *In re Adoption of H.M.C.*, 11 S.W.3d 81, 85-86 (Mo. App. W.D. 2000), an adoption petition and associated termination of parental rights action was filed by persons not biologically related to a child but whom had been appointed guardians of the child. The paternal grandparents'

19

motion to intervene in the action as a matter of right was denied.[24]  *Id.* at 86.  Following the entry of judgment terminating the natural parents' parental rights and entering a decree of adoption in favor of the guardians, grandparents appealed the denial of their motion to intervene.  *Id.* at 86.  We held that the "Paternal Grandparents [sic] biological relationship to the child, by itself, does not constitute the necessary 'interest' under Rule 52.12(a)(2), to require intervention."  *Id.* at 90.  And we held that the "Paternal Grandparents have no legal right, under current Missouri caselaw, which will be directly enlarged or diminished by the adoption of their biological grandchild."  *Id.*  In that case, we cited Missouri Supreme Court precedent recognizing that:

> One "interested" in an action is one who is concerned in the outcome or result thereof ***because he has a legal right which will be directly affected thereby*** or a legal liability which will be directly enlarged or diminished by the judgment or decree . . . .

*Id.* (emphasis added) (quoting *In the Matter of Trapp*, 593 S.W.2d 193, 204 (Mo. banc 1980)).

*In re Adoption of R.S.* is also consistent with our holding.  There, the Southern District reversed an award of visitation rights to paternal grandparents in an adoption proceeding that named maternal grandparents as the adoptive parents.[25]  231 S.W.3d at 827.  The court explained that Chapter 453 does not itself authorize an award of custody or visitation rights and that no other statute authorized such an award in an adoption

---

[24]The paternal grandparents then filed their own petition for adoption of the child and sought to consolidate the adoption petitions, which was denied.  *In re Adoption of H.M.C.*, 11 S.W.3d at 89.

[25]The court observed that the paternal grandparents had been permitted to intervene in the adoption proceeding, a ruling that was not challenged by the adoptive maternal grandparents on appeal.  *In re Adoption of R.S.*, 231 S.W.3d at 830 n.4.  Even though there was no statutory basis affording the paternal grandparents an unconditional right to intervene in the proceeding as permitted by Rule 52.12(a)(1), intervention by a grandparent may be granted permissively by the trail court pursuant to Rule 52.12(b).  *Id.*

20

proceeding. *Id.* at 830-31. Relevant to this case, the court held that "[s]ection 452.375.5 does not give a grandparent a right to [seek] visitation in an adoption proceeding commenced under Chapter 453."[26] *Id.* at 831.

It is thus apparent that a claimed interest in determining custody or visitation will not support intervention as a matter of right in an adoption proceeding because custody and visitation are not "in issue" in an adoption proceeding.[27] Rather, to support intervention as a matter of right in an adoption proceeding, a proposed intervenor must claim a superior legal right to adopt. *In re C.G.L.*, 28 S.W.3d 502 (Mo. App. S.D. 2000), confirms this conclusion. In that case, members of an Indian tribe established a legal right pursuant to the federal Indian Child Welfare Act to preference in the adoptive placement of an Indian child--rights that directly involved the demand at issue in the adoption proceeding. *Id.* at 505. The Indian tribe's legal right to preference in the adoptive placement of the child would have been directly impaired by a decree naming someone else as the child's adoptive parents. *Id.* As a result, the Southern District reversed the trial court's denial of the Indian tribe's motion to intervene as a matter of right. *Id.*

The conclusion that an interest in determining custodial or visitation rights will not support intervention as a matter of right in a proceeding where custody is not "in issue"

---

[26]The Eastern District recently reached the same result in *In re Adoption of E.N.C.*, No. ED101311 (Mo. App. E.D. Dec. 9, 2014). There, the Eastern District concluded that a biological parental grandmother seeking third-party custody pursuant to section 452.375.5(5) could not intervene as a matter of right in an adoption proceeding.

[27]It follows by converse that an adoption decree does not and cannot operate to foreclose later claims to determine custody or visitation assuming such claims are asserted in an appropriate proceeding. Though an adoptive parent, just like a natural parent, enjoys the primary right of custody, "[w]hen in conflict, however, the rule favoring parental custody is superceded by the concerns of the state for the child's welfare." *In Interest of C.L.M.*, 625 S.W.2d 613, 617 (Mo. banc 1981).

21

was also the basis for our decision in *In re D.S.K.*, 428 S.W.3d 655 (Mo. App. W.D. 2013). There, wife filed a petition for declaration of paternity pursuant to the Uniform Parentage Act[28] naming husband and the man that the wife believed to be the biological father of several children born during her marriage to husband. *Id.* at 656. Paternity tests confirmed that husband was not the biological father of the children.[29] *Id.* Husband moved to dismiss himself from the paternity action,[30] and then simultaneously filed a motion to intervene in the paternity action as a matter of right. *Id.* at 657. We affirmed the trial court's denial of the motion to intervene as a matter of right because although section 210.841.3 provides that a paternity judgment "may contain" provisions concerning child custody and visitation, it is not required to do so. *Id.* at 658. We held that Section 210.841.3 allows child custody determinations to be made if such determinations are requested in the paternity petition. *Id.* at 658-59. Because wife's paternity petition sought only a declaration regarding the biological relationship of a putative father to her children and did not seek a child custody determination, child custody was not "in issue," and husband had no interest permitting intervention as a matter of right. *Id.* at 659.

---

[28]Sections 210.817 to 210.852.

[29]Wife was, at the same time, a party to a dissolution proceeding filed by husband. *In re D.S.K.*, 428 S.W.3d at 656. Because paternity testing excluded husband as the children's biological father, the dissolution court had no power to determine custody of the children born while husband and wife were married. A "court does not have the authority in a dissolution proceeding to determine the custody of children not born of the marriage or adopted by the parties." *Id.* at 659 (citing *Warlop v. Warlop*, 254 S.W.3d 262, 263 (Mo. App. W.D. 2008); *In re Marriage of Said*, 26 S.W.3d 839, 843 (Mo. App. S.D. 2000)).

[30]Section 210.834.4 provides that whenever paternity testing establishes that a respondent named in a paternity action is not a child's biological father, "such evidence shall be conclusive of nonpaternity and the court shall dismiss the action as to that party."

*In re D.S.K.* is instructive by analogy. In an adoption proceeding, as in a paternity proceeding limited to determining a putative father's biological relationship to a child, nothing more is at issue than the creation or verification of a parent-child relationship. More to the point, although section 210.841.3 provides that a paternity judgment "may contain" provisions concerning child custody and visitation if that subject is made an issue by the paternity petition, there is no comparable expression of authority in Chapter 453. *See In re Adoption of R.S.*, 231 S.W.3d at 829-31 (holding that there is no statutory authority to award visitation in an adoption proceeding pursuant to Chapter 453, Chapter 211, or section 452.375.5(5)).

*In re C.M.D.*, 18 S.W.3d 556 (Mo. App. W.D. 2000), is also analogous. In that case, a grandparent who claimed an interest in custody was not entitled to intervene as a matter of right in a section 211.447 termination of parental rights proceeding. *Id.* at 565. The grandparent claimed an unconditional statutory right to intervene under section 211.177.1 which permits a grandparent to intervene in a proceeding initiated pursuant to the provisions of Chapter 211 "in which the custody of a grandchild is in issue." *Id.* at 564. We held that the "focus of the court [in a section 211.447 proceeding] is on the parent-child relationship and whether severing that relationship is in the best interest of the child. ***Custody of the child is not 'in issue.'***"[31] *Id.* at 565 (emphasis added). If custody is not "in issue" in a statutory proceeding to determine whether it is in the best interests of a child to *sever* a parent-child relationship, it follows that custody is not "in

---

[31]We thus construed section 211.177.1 as limited in its reach to section 211.031 proceedings to determine custody. *In re C.M.D.*. 18 S.W.3d at 565; *see also In re Adoption of R.S.*, 231 S.W.3d at 830, n.5.

23

issue" in a statutory proceeding to determine whether it is in the best interests of a child to *create* a parent-child relationship.

Here, the trial court concluded that K.L. lacked standing to intervene. In effect, the trial court concluded that K.L. did not have a right or interest that would be directly impacted by a judgment entered in the adoption proceeding. In light of our discussion, this was not error.

## C. K.L.'s Claimed Rights Under Section 452.375.5(5)

K.L. nonetheless argues that the Supreme Court's recent decision in *In re T.Q.L.*, 386 S.W.3d 135 (Mo. banc 2012), requires a different outcome. K.L. argues that *T.Q.L.* elevated section 452.375.5(5) beyond merely authorizing a trial court to award third-party custody in dissolution cases to authorizing an independent cause of action that can be asserted by any third-party in an original proceeding to determine child custody and visitation. According to K.L., *T.Q.L.* required her Motion to Intervene in the adoption proceeding to be granted.[32]

We have some reservation about K.L.'s interpretation of *T.Q.L.*[33] Regardless, even if *T.Q.L.* intended to announce a construction of section 452.375.5(5) that authorizes third

---

[32]K.L. did not cite to *T.Q.L.* in her Motion to Intervene, or in her pleadings opposing the Motion to Dismiss. In fact, none of the parties alerted the trial court to the Supreme Court's decision in *T.Q.L*, or to our decision in *In re D.S.K.,* 428 S.W.3d 655.

[33]In *T.Q.L.*, a man with no biological relationship to a child, but who had believed himself to be and acted as the father of the child for several years, filed a third amended petition in an action under the Uniform Parentage Act ("UPA") seeking a determination of third-party custody rights pursuant to section 452.375.5(5) and seeking a declaration of paternity pursuant to equitable parentage and estoppel principles. 386 S.W.3d at 138. The trial court dismissed the petition for failure to state a claim. *Id.* at 138-39. The Supreme Court highlighted the compelling allegations in the man's petition regarding the natural mother's conduct over the several years during which the man had bonded with the child and regarding the mother's fitness to parent, and concluded that:

Under section 452.375.5(5)(a), Petitioner's third amended petition sufficiently alleged Mother's and the unknown father's unfitness and that granting custody to Petitioner would be in Child's best

24

parties to initiate original proceedings to determine child custody and visitation rights, we have already explained that an interest in child custody or visitation is not sufficient to support intervention as a matter of right in an adoption proceeding where child custody determinations are not "in issue."

K.L.'s second point on appeal is denied.

---

interest. Because Petitioner has alleged the statutory elements for third-party custody, the circuit court shall reinstate his third amended petition.

*Id.* at 140. The Supreme Court expressed no opinion on the Petitioner's claims of paternity based on the principles of estoppel and equitable parentage. *Id.* at 140 n.3.

Though the Court reinstated the man's UPA petition, the Court did not expressly hold that section 452.375.5(5) generally authorizes a third-party to file an independent original proceeding to determine third-party custody rights. The prospect of reliance on section 452.375.5(5) to authorize the filing of an original proceeding to determine third-party custody was flatly rejected by this court in *White v. White*, 293 S.W.3d 1 (Mo. App. W.D. 2009). In *White*, after an extensive discussion of the law with respect to when the assertion and/or determination of third-party custody rights is authorized, this court concluded that:

> [A]t least since 1973, Missouri courts have recognized that a third party's foundational standing to litigate custody or visitation is dependent upon the third party being a named party in an action brought by someone else (parent, Juvenile Officer) or being permitted to intervene in a pending action (dissolution) or in cases where the third party already has something other than *de facto* custody (decretal custody).

*Id.* at 21. We observed that:

> The fact that Missouri statutes and case law permit an award of custody to third parties where there are special or extraordinary reasons or circumstances rendering such custody to be in the best interests of the children, even when the parents are deemed fit and competent, does not end the analysis in this case. Neither our statutes nor our case law remotely suggest that a*ny third party that comes along has standing to bring an action seeking custody of children.*

*Id.* at 18 (emphasis added).

*T.Q.L.* made no reference to the decision in *White*. *T.Q.L.* did not mention any of the earlier appellate and Supreme Court decisions discussed in *White* addressing the narrow circumstances wherein a trial court is authorized to determine third-party child custody and visitation rights. Nor did *T.Q.L.* engage in customary statutory construction analysis to assess whether the legislature intended section 452.375.5(5) to authorize original proceedings to determine third-party child custody and visitation rights.

We have recognized that *T.Q.L.* permitted a third-party to seek the determination of child custody and visitation rights in a petition filed by that party. *See In the Matter of D.S.K.*, 428 S.W.3d at 659. However, for the reasons herein explained, we are reluctant to simply presume that the Supreme Court intended *T.Q.L.* to be read to afford "any third party that comes along standing to bring an action seeking custody of children." *White*, 293 S.W.3d at 18. We acknowledge, however, that *T.Q.L.* does not offer a clear basis for constraint of its holding to the facts in that case.

## Conclusion

K.L.'s appeal from the trial court's grant of the Motion to Dismiss her Child Custody Petition is dismissed for want of a final judgment, requiring remand of this matter for further proceedings.[34]  The trial court's denial of K.L's Motion to Intervene as a matter of right in the adoption proceeding is affirmed.  A.M. and R.M.'s motion seeking an award of attorney's fees is denied.[35]

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

[34]Because the grant of the Motion to Dismiss is not a final judgment, the trial court continues to have jurisdiction over that determination. *See Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 469 (Mo. banc 2011) ("[W]here the 'judgment' in question is not final, Rule 75.01 does not apply and the trial court retains jurisdiction to enter a final judgment." (internal quotation marks omitted)).  On remand, the trial court may elect to proceed with disposition of the Adoption Proceeding and thus to the entry of a final judgment; to certify the grant of the Motion to Dismiss pursuant to Rule 74.01(b) if the trial court believes that "there is no just reason for delay;" or to reconsider and deny the Motion to Dismiss.  An alternative basis for dismissing the Child Custody Petition argued by A.M. and R.M. on appeal (relating to whether the Child Custody Petition adequately alleged each of the essential elements of a claim pursuant to section 452.375.5(5)) was *not* asserted in the Motion to Dismiss.  If that alternative basis for dismissal is duly raised by A.M. and R.M. on remand, the trial court is of course free to consider the argument, as well as any motion that may be filed by K.L. seeking leave to amend the Child Custody Petition to address the sufficiency of its allegations.

[35]Prior to the submission of this case, A.M. and R.M. filed a motion seeking an award of attorney's fees pursuant to Rule 84.19.  That rule allows an appellate court to award damages to the respondent if it "determine[s] that an appeal is frivolous."  "While no hard and fast rule as to what constitutes a frivolous appeal has been advanced and the issue must be considered on a case-by-case basis, the test generally used is whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success." *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 220 (Mo. App. W.D. 2012) (internal quotation marks omitted).  "The issues presented on appeal must be at least fairly debatable in order to avoid assessment of damages for frivolous appeals." *Id.* (internal quotation marks omitted).  K.L.'s appeal is plainly not frivolous.  To argue to the contrary in a Rule 84.19 motion was itself frivolous and resulted in a waste of judicial resources.

26