

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN RE THE MATTER OF: J.D.S. N/K/A J.G.S.; | ) ) ) |
| | ) WD78318 Consolidated with |
| MICKIE AND MICHAEL SMITH, | ) WD78492 |
| | ) |
| Appellants, | ) OPINION FILED: January 26, 2016 |
| | ) |
| v. | ) |
| | ) |
| AMY DUESENBERG, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Platte County, Missouri**
The Honorable W. Ann Hansbrough, Judge

Before Division Three: Joseph M. Ellis, Presiding Judge, Karen King Mitchell, Judge
and Gary D. Witt, Judge

Appellants, Mickie and Michael Smith (the "Smiths"), are maternal grandparents of the minor child, J.S.[1]  Respondent, Amy Duesenberg ("Duesenberg"), is the paternal grandmother of J.S.  Both the Smiths and Duesenberg sought to adopt J.S. after the parental rights of her natural parents were terminated in a separate proceeding. Ultimately, Duesenberg dismissed her adoption petition, the Smiths were granted

---

[1] While we recognize that the adoption of J.S. changed the legal relationships of the parties to J.S., for clarity of discussion and ease of analysis we refer to the parties by their previous relationship to the child.

adoption of J.S., and Duesenberg filed a Petition for Grandparents Visitation ("Petition"). The Smiths failed to respond to the Petition and, following a default judgment, the Circuit Court of Platte County, Missouri, granted Duesenberg visitation time with J.S. The Smiths moved to set aside the default judgment. Following an in chambers conference, the circuit court denied the motion but entered an amended judgment still granting Duesenberg visitation but making some changes requested by Smiths. The Smiths now appeal alleging that the court erred in entering the judgment because Duesenberg lacked standing; in the alternative, the judgment should have been set aside because the Smiths had good cause for the default. We remand with instructions to vacate the judgment and dismiss the petition for lack of standing.

**Factual and Procedural Background**

Paternal rights of J.S.'s natural mother and father were terminated in a separate action. After the parental rights were terminated, both the Smiths and Duesenberg filed competing petitions to adopt J.S. in the Circuit Court of Platte County. The cases were consolidated. An adoption hearing was held in front of Judge Hansbrough on March 28, 2014, at which Duesenberg dismissed her adoption petition in open court but filed a Petition for Grandparents Visitation ("Petition") on the same day. It was docketed as a new case and assigned to Judge Hansbrough. A hearing was set for May 30, 2014. Duesenberg and the Guardian Ad Litem ("GAL") were present for the May 30, 2014 hearing but neither the Smiths nor their attorney appeared. Summonses were issued and a hearing was set for August 21, 2014.

2

The Smiths were served with the Petition on June 9, 2014, and testified that they immediately contacted their attorney. The attorney allegedly told the Smiths that the court could not act without the GAL contacting the Smiths, which had not occurred. He believed the Petition was just to "preserve it for the record." According to an affidavit to the court, the Smiths' attorney did not file an answer to the Petition to "keep the case as non-adversarial as possible." Neither the Smiths nor their attorney attended the hearing on August 21, 2014.

At the August 21, 2014 hearing, the court heard testimony from Duesenberg and the GAL. Duesenberg testified that she had an existing relationship with J.S. and desired to continue contact. The GAL testified that she believed it to be in J.S.'s best interest to have a continuing relationship with Duesenberg. Because no answer was filed and the Smiths did not appear, the circuit court granted default judgment to Duesenberg, found that visitation was in J.S.'s best interest, and entered a judgment establishing a visitation schedule between Duesenberg and J.S.

Five days after the judgment was entered, on August 26, 2015, the Smiths filed a Motion to Set Aside Judgment on Petition for Grandparents Rights and requested a hearing. Counsel and GAL met with Judge Hansbrough in chambers on September 4, 2014. Following the in chambers conference, the court entered an Amended Judgment on Petition for Third-Party Visitation ("Default Judgment"), denying the Smiths' motion to set aside but amended the judgment to address some concerns the Smiths raised regarding the visitation schedule. The amended judgment was entered September 14, 2014.

3

A Motion to Set Aside, Reopen, or Vacate Amended Judgment and an additional Motion to Set Aside Default Judgment were filed on October 17, 2014. The court heard argument on December 4, 2014, at which Duesenberg appeared *pro se*. The court denied the Smiths' motions on January 14, 2015.[2] This appeal followed.

## Discussion

Both the Smiths and Duesenberg were parties to the adoption case that preceded this case; both parties sought to legally adopt J.S. On the day of the adoption hearing, just prior to the introduction of evidence Duesenberg voluntarily dismissed her petition seeking adoption in open court. On that same day she filed her Petition seeking grandparent visitation rights. When Duesenberg's counsel dismissed the adoption petition, the court responded:

> I think we can make a docket entry showing that it is dismissed and I certainly recognize that a Petition for Grandparent Rights has been filed in the civil court so that those rights may be protected, but I will note that it is dismissed from the merged case file, but that your petition is dismissed.

The court also recognized "I understand that there [are] some other grandparent issues that we are going to address as things move along. . . ." At the close of testimony and prior to entering judgment regarding the adoption the court further address the open visitation issue stating:

> I further applaud the parties for getting to this point and I look forward to hopefully cooperation between the grandparents so that we can extend this entire family even further for this precious little child.

---

[2] With leave of this Court, a Judgment Nunc Pro Tunc Denying Respondents' Motion to Set Aside Default Judgment and Denying Respondents' Motion to Set Aside, Reopen or Vacate Amended Judgment was entered April 17, 2015 ("Judgment"). Duesenberg's Petition sought visitation under Sections 452.402, 452.375.5, and 211.177. The original judgment entered by the court referred only to Section 452.402. The Nunc Pro Tunc Judgment did not limit the Judgment to Section 452.402.

4

During the hearing the Smiths' attorney questioned the Smiths regarding their understanding of Duesenberg's right to visitation. Mr. Smith testified:

[Smiths' Attorney]: And you are aware that the paternal grandmother has dismissed her [adoption] petition here today?

[Mr. Smith]: Yes.

Q: You are also aware that she has filed a 452 action for grandparent visitation; you're aware of that?

A: Yes, sir.

Q: And you are aware that she is entitled to that visitation as determined by the court to be in the child's best interest?

A: Yes.

Q: And that is something that you understand?

A: Yes.

Q: And that is something that you are willing to make a good faith effort to participate in?

A: Yeah.[3]

---

[3] Duesenberg provided this court with the transcript of the adoption hearing pursuant to Rule 81.12(c). The Smiths moved for this Court to strike the adoption hearing transcript from the record because it was not introduced as evidence in the underlying action. In support the Smiths cite to *Phillips v. Mo. Dep't of Soc. Servs.*, which excluded testimony from a related case that had not been admitted into evidence. 723 S.W.2d 2 (Mo. banc 1987). Although appellant argued that the testimony was considered by the trial court, the Supreme Court found no support for such a contention and excluded the transcript as abandoned under the provisions of Rule 81.12(b). *Id.* at 3 n. 2. In this case, it is clear that the trial court presided over the underlying proceeding and was aware of and considered the testimony of the Smiths in the underlying proceeding. The testimony in the earlier proceeding formed part of the basis for her holding that the Smiths should be judicially estopped from challenging Duesenberg's right to visitation. Rule 81.12(b) does not prohibit this Court from allowing the record to be supplemented with a transcript of testimony that was clearly considered by and used by the circuit court when issuing the Judgment despite the fact that the transcript was not entered into the record during the default proceedings. This case is a unique and unusual circumstance in which two separate proceedings appear to have been treated as one proceeding by the court although never formally consolidated. Rule 81.12(a) requires that "[t]he record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Because the adoption hearing transcript is relevant to the circuit court's Judgment regarding judicial estoppel we find it a necessary part of the record under Rule 81.12(a). We deny the Smiths' motion to strike.

5

Similarly, Mrs. Smith testified:

> [Smith's Attorney]:  You also understand that the paternal grandparent has filed her petition for 452 grandparent visitation rights and that she is entitled to those under the law; do you understand that?
>
> [Mrs. Smith]:  Yes, sir.
>
> Q:  Okay.  And you understand that the court will make a determination as to what is in the best interest regarding that visitation?
>
> A:  Yes, sir.

It is clear from the entirety of the record that, at the time of the adoption, Duesenberg, the GAL, and the court all believed the Smiths would act in good faith to allow Duesenberg visitation if so ordered by the court and all believed that the court had the authority to order such visitation.[4]  The Petition was in substitution for the adoption petition which was dismissed in exchange for receiving grandparent visitation.  A hearing date on the Petition was set for May 30, 2014, prior to the close of the adoption hearing and the Smiths' attorney was made aware of the hearing.

## I.

The Smiths' first point on appeal challenges the validity of the circuit court's judgment arguing that it is void because Duesenberg lacked standing to bring her

---

[4] It is also evident from the questioning of Mr. and Mrs. Smith, that the Smiths and their attorney believed that Duesenberg was entitled to some form of grandparent visitation and represented such to the court.  Yet, as this opinion demonstrates, once the adoption in favor of the Smiths became a judgment from which no appeal was timely made therefrom, Duesenberg no longer had standing to assert a right to grandparent visitation at a later time.  Thus, at this point, there is no lawful basis upon which the court can compel the Smiths to act in the fashion that they indicated to the court they would.  We hope that the Smiths were not making misrepresentations to the adoption court when they testified that they believed it was in the child's best interest for Duesenberg to have visitation with the child.  However, we caution juvenile courts and lawyers representing individuals like the Smiths and Duesenberg to be mindful of the effect of an adoption proceeding as to grandparents.  When a child is adopted, all legal relationships and all rights between the child and the child's natural parents [and natural grandparents] cease and thereafter the child is the child of the adoptive parents as though born to them in wedlock.  Section 453.090.

Petition. It is clear from the record that, at the time of the adoption proceeding, all parties—including the court—believed that Duesenberg's right to visitation was open to adjudication and the Smiths would accept the court's ruling on that issue. Despite this understanding, following the Judgment, the Smiths seek to challenge Duesenberg's standing to request visitation.

It is incumbent on this Court to determine whether Duesenberg had standing to bring her Petition.

> "Standing is a jurisdictional matter antecedent to the right to relief." *Farmer v. Kinder,* 89 S.W.3d 447, 451 (Mo. banc 2002). Standing inquires into "whether the persons seeking relief have a right to do so." *Id.* "Standing requires that a party seeking relief have a legally cognizable interest in the subject matter and that he has a threatened or actual injury." *Eastern Mo. Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 46 (Mo. banc 1989). "Where, as here, a question is raised about a party's standing, courts have a duty to determine the question of their jurisdiction before reaching substantive issues, for if a party lacks standing, the court must dismiss the case because it does not have jurisdiction of the substantive issues presented." *Farmer,* 89 S.W.3d at 451. That is to say, "'[r]egardless of the merits of appellants' claims, without standing, the court cannot entertain the action.'" *Pace Constr. Co. v. Missouri Highway & Transp. Comm'n,* 759 S.W.2d 272, 274 (Mo.App. W.D.1988) (quoting *Champ v. Poelker,* 755 S.W.2d 383, 387 (Mo.App. E.D.1988)). "Lack of standing can not be waived...." *Aufenkamp v. Grabill,* 112 S.W.3d 455, 458 (Mo.App. W.D.2003) (quoting *State ex rel. Mink v. Wallace,* 84 S.W.3d 127, 129 (Mo.App. E.D.2002)).

*White v. White*, 293 S.W.3d 1, 8 (Mo. App. W.D. 2009). Review of a circuit court's determination as to party standing is *de novo*. *Id.*

> The Missouri Supreme Court's decision in *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009), left some question as to whether a plaintiff's lack of standing implicates the trial court's subject-matter jurisdiction. *See Borges v. Mo. Pub. Entity Risk Mgmt. Fund,* 358 S.W.3d 177, 183 (Mo.App.W.D.2012) ("It remains an open question whether a lack of standing implicates the court's jurisdiction or merely the

7

court's authority...."). However, more recently, in *CACH, LLC v. Askew,* 358 S.W.3d 58 (Mo. banc 2012), the Supreme Court clarified that "[c]ourts have a duty to determine if a party has standing prior to addressing the substantive issues of the case," and that, "[f]or this reason, standing cannot be waived." *Id.* at 61. The Court cited *Farmer v. Kinder,* 89 S.W.3d 447, 451 (Mo. banc 2002), to support these statements. *Farmer* states that "[s]tanding is a jurisdictional matter antecedent to the right to relief." *Id.* Other post-*Webb* Court of Appeals decisions have characterized standing as an aspect of the circuit court's subject-matter jurisdiction. *See, e.g., Higginbotham v. Higginbotham,* 362 S.W.3d 34, 36–37 (Mo. App. S.D. 2012) ("When a party lacks standing sufficient to maintain the action and, consequently, has no right to relief, the court necessarily does not have jurisdiction of the question presented and may not enter a judgment on the matter." (citation omitted)); *State ex rel. St. Louis Retail Grp. v. Kraiberg,* 343 S.W.3d 712, 715 (Mo. App. E.D.2011) ("If a party lacks standing, the court must dismiss the case because it lacks jurisdiction to consider the substantive matters." (citation omitted)); *White v. White,* 293 S.W.3d 1, 8 (Mo.App.W.D.2009) (same).

*Matter of Adoption of E.N.C.*, 458 S.W.3d 387, 397 (Mo. App. E.D. 2014). "Standing to sue evaluates the sufficiency of a plaintiff's interest in the subject of the lawsuit." *Id.* It is "a concept used to ascertain if a party is sufficiently affected by the conduct complained of in the suit, so as to insure that a justiciable controversy is before the court." *Id. at 397-98* (quoting *Coyne v. Edwards*, 395 S.W.3d 509, 516 (Mo. banc 2013).

> "Interest," generally, means a concern which is more than mere curiosity, or academic or sentimental desire. One interested in an action is one who is interested in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree in such action.

*Id.* at 398 (quoting *Matter of J.F.K.,* 853 S.W.2d 932, 935 (Mo. banc 1993)). Grandparents do not have a legally protectable right to visitation with grandchildren at common law. *In re Adoption of R.S.*, 231 S.W.3d 826, 829 (Mo. App. S.D. 2007). Accordingly, only those rights granted to them by statute can support standing to litigate.

8

*Id.* The same is true for grandparents who seek visitation as an interested third-party. *See White*, 293 S.W.3d at 19-21.

We begin by noting that the Smiths brought two separate motions to set aside the default judgment. The first motion moved to set aside the judgment entered on August 21, 2014, and raised issues solely related to whether or not visitation was in the best interest of the child. As noted above, the court denied the motion but amended the visitation schedule. After the amended judgment was entered, the Smiths again brought a motion to set aside default judgment for the first time challenging Duesenberg's standing to bring her Petition. Generally, a party cannot continually file additional motions asserting the same basis for the motion ignoring the doctrines of res judicata and collateral estoppel. *See, generally Walker v. Walker*, 954 S.W.2d 425, 427 (Mo. App. E.D. 1997). In this case, however, while the issues previously raised in the first motion would have been barred, standing was not raised and is not an issue that can be waived. *See, supra*. As such, we will review whether Duesenberg had standing to bring her Petition despite the fact that it was raised in a second motion to set aside default judgment.

Duesenberg filed her Petition seeking visitation pursuant to Sections 452.402, 452.375.5, and 211.177.[5] Section 452.402 allows a court to grant visitation to a grandparent in three limited circumstances: (1) after the dissolution of marriage by parents; (2) where one parent is deceased and the surviving parent denies reasonable

---

[5] All statutory citations are to RSMo 2000, as updated through the 2015 Cumulative Supplement, unless otherwise indicated.

9

visitation; or (3) where the child resided in the grandparent's home for at least six months and visitation has been unreasonably denied for a period exceeding ninety days. The parties do not dispute that none of these circumstances exist in this case. Thus, no action under Section 452.402 would be proper and Duesenberg had no standing under this statute.

Similarly, Section 211.177 allows a grandparent to intervene in a Chapter 211 action where the custody interests of a child are being decided. The record is clear that the events surrounding this dispute did not involve a Chapter 211 action but rather an adoption action brought pursuant to Chapter 453. Thus, Section 211.177 afforded Duesenberg no rights of intervention or, ultimately, no standing to request visitation. The circuit court noted in its Judgment that "the case at bar was originally a termination of parent rights case," presumably seeking to bring the case under Chapter 211. The record before this Court indicates that the adoption proceeding at issue was brought pursuant to Chapter 453. Even if the termination of parental rights was adjudicated within that proceeding it was not a "proceeding initiated pursuant to" Chapter 211. Duesenberg offers no argument on this point and we can find no support for applying Section 211.177 to an action outside a Chapter 211. Further, even if it applies to an adoption proceeding, it only gives a right of intervention and does not give the court authority to grant visitation. *In re Adoption of R.S.*, 231 S.W.3d at 829-30.

The only section truly at issue is Section 452.375.5, which allows a court to consider whether third-party custody or visitation is proper "[p]rior to awarding the appropriate custody arrangement in the best interest of the child." The Smiths argue that

10

Duesenberg is not entitled to standing to apply for visitation under Section 452.375.5 because the section only allows third-party visitation to be considered in conjunction with an ongoing custody hearing. Duesenberg's Petition was filed as a separate action not as a motion within a custody proceeding. Further, even if the request for visitation were filed as a motion within the adoption proceeding, it was not proper under Section 452.375. We agree.

The Southern District of this Court determined the bounds of standing under Section 452.375 in *In re Adoption of R.S.* 231 S.W.3d at 829-31. In *In re Adoption of R.S.*, paternal grandmother and step-grandfather sought visitation with their granddaughter who had been adopted by maternal grandparents. *Id.* at 827. As part of the adoption proceedings, paternal grandparents filed a motion seeking visitation as authorized under Section 211.177. *Id.* at 829-30. As is the case here, the court determined Section 211.177 does not grant a court authority to grant a party visitation in a Chapter 453 adoption. As to Section 452.375.5, the Court noted that "[i]t is unlikely this statute was ever intended to be used to grant a party a right to visitation in an 'adoption' case." *Id.* at 830.

> First, the statute is speaking of providing a "custody arrangement" for a child. While an adoption certainly entails the adoptive parents receiving both legal and physical custody of the child, it is different than just granting custody to a parent or a third party. "When a child is adopted ... all legal relationships and all rights and duties between such child and his natural parents ... shall cease and ... [s]uch child shall thereafter be deemed and held to be for every purpose the child of his parent or parents by adoption [.]" Section 453.090. Accordingly, in an adoption proceeding, unlike in a proceeding awarding custody to a parent or a third party, the legal rights of a natural parent are completely abrogated. Id. This "statutory abrogation extends to grandparents—parents of the natural parent whose rights were

11

taken away" as well. *In re Marriage of A.S.A.,* 931 S.W.2d 218, 225 (Mo.App. S.D.1996). Therefore, Section 452.375.5 does not give a grandparent a statutory right to visitation in an adoption proceeding commenced under Chapter 453.

*Id.* at 830-31 (Mo. App. S.D. 2007); *See also In re E.N.C.*, 458 S.W.3d at 400-05 (holding that "Section 452.375.5 provides that a third party may intervene in a case in which custody is at issue, only in a dissolution of marriage action or a modification of a dissolution proceeding" and reversing the circuit court's order permitting a grandmother to intervene in an adoption proceeding for the purposes of obtaining visitation); *In Matter of Adoption of C.T.P.*, 452 S.W.3d 705, 718 (Mo. App. W.D. 2014) (Section 453.375.5 cannot support a claimed interest for visitation "as a matter of right in an adoption proceeding because custody and visitation are not 'in issue' in an adoption proceeding"). Ultimately, the Southern District found the paternal grandparents lacked standing to request visitation and reversed the award of visitation. *In re Adoption of R.S.*, 231 S.W.3d at 831. We find this case to be directly on point. Duesenberg does not acknowledge the limitation of these cases nor does she attempt to distinguish their holdings other than to argue they were wrongly decided. We find that the precedent is clear that Duesenberg did not have standing to bring her Petition under sections 452.402, 211.177, or 452.375.5.

In denying the Smiths' motion to set aside the default judgment, the circuit court held that the Smiths should be judicially estopped from contesting the assertion of visitation rights because both Mr. and Mrs. Smith "testified that they endorsed the Petitioner having visitation with [J.S.] in the adoption proceeding, which resulted from an

12

agreement among the parties and the Guardian ad Litem for the maternal grandparents to adopt [J.S] and for the paternal grandmother to have visitation rights with [J.S.]." The Smiths' testimony, as reproduced above, acknowledges that they were aware that Duesenberg had filed a petition seeking visitation and stated that they would make a "good faith effort" to participate in any visitation awarded by the court. At the hearing regarding the Smiths' Motion to Set Aside Default Judgment, filed October 17, 2014, the Court referenced a letter from the GAL[6] advising the juvenile office that the Smiths and Duesenberg had reached an agreement regarding the adoption of J.S. Duesenberg testified that this agreement was for her not to contest the Smiths' adoption of J.S. in exchange for visitation rights. It is abundantly clear from the record that, based in part on the statements of the Smiths and their attorney, Duesenberg and the court were under the impression that the Smiths were in agreement that Duesenberg had a right to visitation although the court was still to determine the extent of such right.

"Judicial estoppel applies to prevent litigants from taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at the time." *Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo. App. E.D. 2007). The United States Supreme Court has found that there are three factors relevant to consider when determining whether to apply judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third

---

[6] This letter is part of the confidential juvenile file and has not been provided to this Court on appeal.

13

> consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Zedner v. United States*, 547 U.S. 489, 504 (2006) (citations and internal quotation marks omitted); *In re Contest of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137, 140 (Mo. App. W.D. 2011) (quoting *Zedner*). "There is no mechanical test, however, and ultimately, because the rule is intended to prevent improper use of judicial machinery, the discretionary determination to apply the doctrine of judicial estoppel is made on a case-by-case basis" and invoked by the court at its discretion. *Gray v. City of Valley Park, Mo.*, 567 F.3d 977, 981-82 (8th Cir. 2009) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

Whether to apply judicial estoppel to a standing determination appears to be an issue of first impression in Missouri. We begin by reviewing the three considerations established by the United States Supreme Court. First, we find that the Smiths' position regarding Duesenberg's right to visitation in the case at bar is clearly inconsistent with its position at the adoption proceeding. The Smiths seek to split hairs on appeal arguing that their testimony at the adoption proceeding did not state they would not contest visitation by Duesenberg. They did, however, testify that she was "entitled to . . . visitation as determined by the court" and that they would act in "good faith" to participate in such visitation. Both Duesenberg and the court believed Duesenberg's adoption petition was being dismissed with the understanding that visitation was an open question yet to be determined by the court. A hearing date to resolve the Petition for visitation was set during the adoption proceeding. Judge Hansbrough oversaw both the adoption

14

proceeding and the proceedings regarding the Petition for visitation. It is telling that she herself found judicial estoppel to be warranted. It is certainly inconsistent for the Smiths to now allege that Duesenberg has no right to visitation and affirmatively seek to have her Petition dismissed for lack of standing.

The second part of the test is whether the party succeeded in persuading the court to accept its earlier position. In this case, based on Judge Hansbrough's actions, it appears that she was working on the incorrect belief that the visitation issue would be decided by her and certainly the Smiths did nothing to correct this belief.

Finally, the third consideration is whether the Smiths derive an unfair advantage or impose an unfair detriment on Duesenberg in now challenging standing. We find as to Duesenberg's request for visitation they do not. As discussed *supra*, the circumstances in which a grandparent can be granted visitation to a grandchild are limited and well defined. None of the three statutes under which Duesenberg sought visitation allow for a grant of visitation in a Chapter 453 adoption case. Even if the Smiths had honestly informed the court during the adoption hearing that they intended to challenge Duesenberg's right to visitation and her rights had been adjudicated in the adoption proceeding—eliminating the judicial estoppel issue—she would have been unsuccessful. *See In re Adoption of R.S.*, 231 S.W.3d 826. Had the circuit court addressed the visitation issue within the adoption proceeding it would have found, as discussed above, that Duesenberg lacked standing to request visitation on any of the grounds she alleges. Thus, the Smiths' lack of candor with the circuit court did not ultimately prejudice Duesenberg's request for visitation.

15

We question, however, whether the Smiths' misrepresentations gave them an unfair advantage or imposed an unfair detriment to Duesenberg within the adoption proceeding. It appears from the record that the parties had reached an agreement in which Duesenberg would dismiss her competing adoption petition in consideration of receiving visitation with J.S. Had the Smiths been candid with the court that they intended to challenge Duesenberg's ability to obtain visitation, Duesenberg could have chosen not to withdraw her adoption petition and to continue to seek full adoption of J.S. rather than just visitation.[7] Although the record before this Court regarding the adoption proceeding is limited, we find that by not having to address a competing adoption proceeding, the Smiths may have received an unfair advantage that would justify the application of the doctrine of judicial estoppel.

In applying judicial estoppel, the circuit court did not discuss the three factors established by *Zedner* but we find that, under the test outlined, judicial estoppel may have been warranted. However, this is the unusual case in which the trial court sought to apply judicial estoppel to grant a party standing to bring a visitation claim, when the party otherwise would lack standing to proceed. Although we accept that in many cases the court would have been free in its discretion to apply the doctrine of judicial estoppel

---

[7] We note that it appears from the transcript of the adoption proceeding Duesenberg's attorney dismissed the adoption petition *prior* to the Smiths' misleading statements. The extent to which the Smiths represented their intentions to the court remains unclear from the legal file provided to this Court. It appears that the Smiths made representations to the GAL prior to the adoption proceeding that they intended to allow visitation and this information was provided to the court. Further, as Duesenberg's attorney was present for the adoption proceeding, there may have been an opportunity for the court and Duesenberg to withdraw the dismissal had the Smiths testified candidly.

16

under similar facts, judicial estoppel cannot be applied to grant jurisdiction over a claim that could not otherwise be brought.

The Eighth Circuit discussed the use of judicial estoppel to create standing in *Gray v. City of Valley Park, Mo.*, 567 F.3d 976 (8th Cir. 2009). In *Gray*, the appellant argued to the district court that she had standing to challenge an ordinance—alleging specific facts regarding imminent injury. *Id.* at 980. But, after losing her motion for summary judgment, on appeal Gray argued that she never had standing so the district court lacked subject matter jurisdiction. *Id.* Rather than apply judicial estoppel, the court conducted its own inquiry as to standing. *Id.* at 980-81. The court found that "[i]n the end we must have Article III jurisdiction to entertain *any* claim" and even though the tactics resulted in "extreme perversion of the judicial process" the court could "not forge ahead on blind principle without jurisdiction to do so." *Id.* at 982; *See also, Grubb v. Pub. Utils. Comm'n of Ohio*, 281 U.S. 470, 475 (1930) (party entitled to raise question as to subject-matter jurisdiction "notwithstanding his prior inconsistent attitude"); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227-28 (10th Cir. 2011) (decline to preclude ERISA standing under doctrine of judicial estoppel "by holding that a party may establish subject-matter jurisdiction based on complete preemption via judicial estoppel); *Carey v. Lincoln Loan Co.*, 157 P.3d 775, 777 n. 2 (Or. 2007) (quoting *Wink v. Marshall*, 392 P.2d 768 (Or. banc1964) ("Jurisdiction cannot be conferred by the parties by consent, nor can the want of jurisdiction be remedied by waiver, or by estoppel.")); *Stone v. Davis*, 55 Ca. Rptr. 3d 833, 837 (Cal. Ct. App. 2007) ("Subject matter jurisdiction cannot be conferred by estoppel").

17

The case law from these other jurisdictions is persuasive. A litigant cannot obtain standing to bring an action solely based on judicial estoppel. To do so would create a new avenue for a court to obtain jurisdiction and allow a court to rule in a proceeding without any currently recognized constitutional authority to do so. Further, even if this Court were to find, contrary to other jurisdictions, that standing can be conferred by judicial estoppel, we still question what remedy Duesenberg could receive. Upon remand, the circuit court would have jurisdiction to hear Duesenberg's Petition seeking visitation but no statutory authority upon which to grant her request for visitation.[8] The law is clear that Chapter 211 accords a grandparent the opportunity to intervene in an action but does not give a court authority to grant visitation. Nor do Sections 452.402 and 452.375.5—the only recognized statutory grants of grandparent visitation in Missouri—provide any remedy for Duesenberg given the facts of this case. As such, even going to the extreme measure of recognizing a new avenue to standing in Missouri, the trial court could not afford Duesenberg the relief she currently seeks. While we are sympathetic to Duesenberg and her grandchild J.S., only the legislature can grant her the standing to seek the relief she desires under the current facts of this case.

We find that Duesenberg did not have standing under any of the three statutes or judicial estoppel to obtain visitation. Because she lacked standing to bring her Petition, the circuit court erred in denying the Smiths' motion to set aside the judgment.[9] We grant

---

[8] Duesenberg makes no argument challenging the validity of the adoption or allegation that the adoption should be set aside. Her sole arguments to the circuit court and on appeal relate to her rights to receive visitation pursuant to Sections 452.402, 211.177, or 452.375.5.

[9] We recognize that the outcome of this case is regrettable. Both the GAL and circuit court found that a continuing relationship with her grandmother would be in J.S.'s best interest. It is disappointing to this Court that

18

the Smith's first point on appeal and, as it is dispositive of the case, decline to address the additional three points raised on appeal.

## Conclusion

We remand with instructions to the circuit court to vacate its judgment and dismiss Duesenberg's Petition for visitation for lack of standing.

_____
Gary D. Witt, Judge

All concur

---

the Smiths were able to sever such an important relationship with misrepresentations and seizing on Duesenberg's procedural missteps. In the *Matter of Adoption of E.N.C.*, our colleagues on the Eastern District expressed hope that the parties might one day recognize the bond between grandmother and grandchild and reunite the two. We too express hope that the Smiths would take to heart the findings of the circuit court and GAL that it is in the child's best interests to maintain this relationship and reunite grandmother and granddaughter with reasonable time together.