

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| IN RE THE MATTER OF: A.L.P. AND S.H.P., MINORS; | ) ) ) |
| ALICIA SMITH, | ) ) |
| Respondent, | ) ) |
| v. | ) WD87406 ) Consolidated with WD87522 |
| LORA MARTINEZ, | ) ) Filed: April 22, 2025 |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County
The Honorable Kenneth R. Garrett III, Judge**

**Before Division Three: Edward R. Ardini, Jr., P.J.,
and Alok Ahuja and Thomas N. Chapman, JJ.**

Based on a visitation schedule to which the parties had stipulated, the Circuit Court of Jackson County awarded Alicia Smith third-party visitation rights with respect to two children who had been adopted by Lora Martinez. Martinez appeals. She argues that Smith lacked standing to seek third-party custody and visitation under § 452.375.5(5),[1] and that the circuit court erred in finding that Martinez had consented to the entry of judgment. We affirm.

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2024 Cumulative Supplement.

## Factual Background

The minor females who are the subject of this proceeding, A.L.P. and S.H.P., are presently almost sixteen years old. They were adopted by Martinez in a proceeding in which Smith had filed a competing adoption petition. Our opinion in Smith's appeal of the adoption judgment describes the relevant facts:

> In approximately 2001 or 2002, [Smith] and [Martinez] met and became romantically involved. S.P. and A.P. are twin girls . . . . [Smith] and [Martinez] learned of S.P. and A.P. when the girls were 18 months old . . . . With the permission of the biological mother, the children began living with [Smith] and [Martinez] on November 23, 2011. Two months later, [Smith] and [Martinez] were granted joint letters of guardianship over the children by the Circuit Court of Buchanan County. . . .
>
> [Smith], [Martinez], and the children resided together . . . until [Smith] and [Martinez]'s relationship ended in 2013. . . . Beginning in 2014, the children resided primarily with [Smith] due to [Smith]'s more flexible work schedule. During this time, the children spent every other weekend with [Martinez], as well as two days a week. The children's schedule of two days a week and every other weekend with [Martinez] continued up to the time of trial [in March 2020]. . . .
>
> In 2015, [Smith] and [Martinez]'s relationship as co-guardians began to deteriorate. This coincided with [Smith] meeting and starting a romantic relationship with her present Wife. . . .
>
> . . . .
>
> On April 9, 2019, [Smith] filed her petition for adoption of the children. On June 13, 2019, [Martinez] filed her competing petition for adoption of the children. The trial court thereafter consolidated the two adoption cases.

*In re S.H.P.*, 638 S.W.3d 524, 527-28 (Mo. App. W.D. 2021).

The circuit court conducted a bench trial on the parties' competing adoption petitions. On September 27, 2020, the court granted Martinez's

adoption petition, and denied Smith's competing petition. Smith appealed. This Court affirmed the judgment in the adoption case. *In re S.H.P.*, 638 S.W.3d 524. Our opinion noted that "'[a]n adoption proceeding is not a child custody determination wherein competing custodial rights to a child are weighed and determined by the court.'" *Id.* at 531 (quoting *In re Adoption of C.T.P.*, 452 S.W.3d 705, 716 (Mo. App. W.D. 2014)). We also noted that, "[o]nce the adoption is complete, a person may seek to obtain third-party child custody and visitation determinations authorized by law." *Id.* at 532 n.8 (citing *C.T.P.*, 452 S.W.3d at 717).

On October 6, 2021, while her appeal of the adoption judgment was pending, Smith filed a petition in the Circuit Court of Jackson County seeking third-party custody and/or visitation with the children. Smith's petition relied on § 452.375.5(5)(a). The petition alleged that Martinez "is unfit, unsuitable, and/or unable to care for the minor children and [that] the welfare of the children . . . require[s] custody be vested with" Smith and her wife. In the alternative, Smith prayed that she be awarded visitation rights.

Martinez filed a motion to dismiss Smith's petition. She argued that Smith did not have standing to seek third-party custody or visitation under § 452.375.5(5)(a). Martinez also argued that Smith's petition was barred by *res judicata* (or claim preclusion) based on the judgment in the adoption proceeding. Finally, Martinez's motion to dismiss contended that Smith had unclean hands, based on her purported interference with Martinez's relationship with the children, both before and after the adoption judgment. The circuit court denied Martinez's motion to dismiss on February 22, 2022.

3

The court granted Smith's motion for appointment of a guardian *ad litem* on March 15, 2022.  On January 9, 2023, the circuit court granted the motion of Martinez's attorney to withdraw as counsel; Martinez proceeded *pro se* from January 2023 through the entry of the circuit court's judgment in April 2024.

The parties conducted discovery, and multiple trial settings were scheduled, then continued.  Ultimately, the case was set for trial on February 7, 2024.  On February 6, 2024, the day before trial, the parties informed the court that the case had settled.  Based on the parties' notification of settlement, the court cancelled the trial setting.

Also on February 6, the guardian *ad litem* filed two documents with the Court.  The notarized signatures of Martinez and Smith appeared on both documents.  The first document was an "Affidavit of Petitioner and Respondent Requesting Entry of Judgment of Third Party Visitation."  The Affidavit stated that the parties were filing it "to form a basis for the Court entering Judgment in this case . . . without the necessity of a formal hearing."  The Affidavit recited that the parties had entered into a stipulation to govern Smith's visitation with the children, that the agreed visitation schedule was "in the best interest of the minor children," and that "[t]he parties request that the Court enter a Judgment of Visitation based upon" the parties' agreement.

The parties' "Joint Stipulation for Visitation" detailed the parties' agreed visitation schedule.  The Joint Stipulation specified that Smith would have visitation with the children every Monday evening, and on alternating weekends from Friday evening until Sunday evening.  The Stipulation also provided Smith with several hours of additional visitation time around Christmas, and with one

4

continuous week of visitation during the children's summer vacation. The Stipulation specified that Martinez would keep Smith informed concerning the children's health and medical care, and concerning their educational progress. The Joint Stipulation closed with the parties' recital that they had entered into the Stipulation "freely and voluntarily, after consultation with counsel and after great consideration as to what is the best for the minor children," and that "[a]ll parties understand and stipulate that these provisions are best for" the children.

Smith's counsel submitted a form of proposed judgment to the circuit court on February 7, 2024, which incorporated the visitation schedule to which the parties had agreed.

Over seven weeks later, on March 29, 2024, the circuit court e-mailed the parties: "Following up again on whether this is the final product for this to sign and upload. Please advise." On March 30, Martinez responded that she would be "asking the court [for] time to change the joint stipulation agreement"; she advised the court that, "[i]f allowed the grace from the court, I will seek counsel to attempt to set aside the joint stipulation."

The circuit court held a teleconference with the parties on April 9, 2024. The record on appeal does not include a transcript of this teleconference. Following the telephone conference, Smith's counsel reminded the court by e-mail "that we have a signed affidavit and a signed stipulation already on file in this matter." Given the joint affidavit and stipulation, Smith's counsel asked whether it would be necessary for Smith to file a motion to enforce the parties' settlement.

The circuit court signed the proposed judgment submitted by Smith's counsel later that day. The judgment stated that the court had "reviewed the settlement of the parties with supporting pleadings." Based on that review, the court found that Smith and the children "have a significant familial bond"; that "it is in the welfare of the children that visitation be awarded" to Smith; and that the parties' agreed visitation schedule was in the children's best interest. The judgment ordered that Smith be provided with the visitation specified in the parties' Joint Stipulation for Visitation.

Martinez retained new counsel, and filed a motion to amend the judgment or for a new trial on May 8, 2024. Martinez' post-judgment motion renewed the standing argument she had made in her earlier motion to dismiss. The post-judgment motion also argued that, because Martinez never agreed to the proposed judgment submitted by Smith's counsel, the circuit court had no authority to enter that judgment.

The circuit court did not rule on Martinez's post-judgment motion; the motion was accordingly deemed denied on August 6, 2024. *See* Supreme Court Rule 81.05(a)(2)(A). Martinez filed her notice of appeal on August 9; her appeal was docketed as No. WD87406.

After the circuit court entered its judgment granting Smith third-party visitation, Smith filed a family access motion in the circuit court on June 28, 2024, in which she alleged that Martinez had denied Smith visitation more than seven times since the entry of the visitation judgment. On August 25, 2024, the circuit court found that Martinez had violated the judgment for third-party visitation without good cause. The circuit court awarded Smith compensatory

6

visitation, and ordered Martinez to pay Smith $750 in attorney's fees. Martinez separately appealed from the judgment on the family access motion; her second appeal was docketed as No. WD87522. This Court later consolidated the two appeals.

## Discussion

## I.

Martinez's first Point argues that Smith did not have standing to seek third-party custody or visitation under § 452.375.5. Section 452.375.5(5)(a) provides:

> (5)　Third-party custody or visitation:
>
> (a)　When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody, temporary custody or visitation may be awarded to a person related by consanguinity or affinity to the child. If no person related to the child by consanguinity or affinity is willing to accept custody, then the court may award custody to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child. Before the court awards custody, temporary custody or visitation to a third person under this subdivision, the court shall make that person a party to the action . . . .

### A.

The Missouri Supreme Court has specifically held that persons unrelated to a child may file an independent petition for third-party custody under § 452.375.5(5)(a). In *In re T.Q.L.*, 386 S.W.3d 135 (Mo. 2012), a man filed a paternity action under the Uniform Parentage Act, §§ 210.817-210.852. The man sought a declaration of paternity, and custody and visitation, with respect to the child of a woman with whom the man had previously been in a romantic

7

relationship. *Id.* at 137. A DNA test revealed that the man was not the child's biological father. *Id.* The circuit court then dismissed the man's claim under the Uniform Parentage Act, and refused to allow him to amend his petition to seek custody on grounds other than a biological relationship to the child. *Id.* at 137-38. During an earlier appeal, the Southern District held that, although the man was not the child's biological father, he was entitled to amend his petition to assert "'alternative theories of custody.'" *T.Q.L. ex rel. M.M.A. v. L.L.*, 291 S.W.3d 258, 261 (Mo. App. S.D. 2009). The case was remanded to the circuit court for further proceedings.

On remand, the man filed an amended petition, which alleged that both of the child's parents were unfit; the man sought to have custody awarded to him. The circuit court once again dismissed, "based upon [the man's] failure to put forth a theory under which Child's custody could be determined properly." *In re T.Q.L.*, 386 S.W.3d at 138-39. The Missouri Supreme Court reversed, and reinstated the man's petition, on the basis that he had adequately alleged a claim for third-party custody under § 452.375.5(5)(a):

> Petitioner's third amended petition was sufficient to meet the requirements of section 452.375.5(5)(a) because it alleged the unfitness of Child's biological parents and that awarding Petitioner custody of Child would be in Child's best interest. In addition to Petitioner's sufficient allegations of Mother's and the unknown father's unfitness, his petition to transfer custody survives a motion to dismiss because he alleges facts that the "welfare of the child requires" that custody be vested in a third party pursuant to section 452.372.5(5)(a). This Court does not weigh the credibility and persuasiveness of the facts Petitioner alleged in his petition but acknowledges that those facts meet the elements of section 452.375.5(5)(a), and for that reason, the petition will be reinstated.

*Id.* at 140 (citation omitted).

Following *T.Q.L.*, this Court has held in multiple cases that a person unrelated to a child by blood or marriage may file an independent petition seeking third-party custody under § 452.375.5(a). Thus, in *K.M.M. v. K.E.W.*, 539 S.W.3d 722 (Mo. App. E.D. 2017), the Eastern District of this Court recognized that, although earlier decisions had refused to recognize an independent cause of action for third-party custody under § 452.375.5(a), *T.Q.L.* was now controlling:

> For several decades, it was generally recognized that a third party's standing to litigate custody or visitation pursuant to Section 452.375.5 was limited to situations where the third party was a named party to an action brought by someone else, was permitted to intervene in a pending action such as a dissolution, or already had custody other than *de facto* custody. Third-party petitions and claims were routinely rejected based on lack of standing.

> The Missouri Supreme Court recently opened the courthouse doors in *In re T.Q.L.*, 386 S.W.3d 135, 140 (Mo. banc 2012), by holding third parties can maintain an independent action seeking custody or visitation pursuant to Section 452.375.5(5)(a).

*Id.* at 735-36 (other citations omitted).

The Court summarized the law governing actions for third-party custody, in the wake of *T.Q.L.*, in *Conoyer v. Kuhl*, 562 S.W.3d 393 (Mo. App. E.D. 2018):

> Section 452.375.5 authorizes a cause of action for individuals seeking third-party rights to custody or visitation of a minor child. This action is not intended to be an avenue to custody or visitation rights available to any third party that comes along. Rather, Section 452.375.5 has been consistently held to apply to individuals who have, for a substantial period and to a substantial degree, fulfilled the role of a primary parent to a child, most especially when they have done so at the behest of that child's natural parent. In other words, Section 452.375.5 does not provide a means by which any and all relatives and caretakers of a minor child may seek custody or visitation, but rather a means by which individuals with a significant

9

> bonded familial custodial relationship not otherwise recognized by law may seek a right to meaningful contact with the child.
>
> In evaluating a claim under Section 452.375.5, a court must begin with the presumption the natural parent or parents are fit and suitable to make decisions consistent with the child's welfare and best interests, including decisions about with whom the child should have contact. In order to rebut this presumption, the petitioner has the burden of demonstrating the parent or parents against whom the action is brought are unfit, unsuitable, or unable to be a custodian or the welfare of the child requires custody or visitation rights vest with the petitioner. Only after a petitioner has rebutted the parental presumption under either the "fitness" or "welfare" prong does the court examine whether an award of third-party custody or visitation is in the child's best interests, and whether the petitioner can provide a suitable and stable environment for the child.

*Id.* at 397-98 (cleaned up).

For other cases recognizing a third party's right to bring an independent action for child custody under § 452.375.5(5)(a), *see Payne v. Nilsson*, 679 S.W.3d 543, 679 S.W.3d 543, 547-48 (Mo. App. W.D. 2023); *K.T.L. ex rel. K.L. v. A.G.*, 648 S.W.3d 110, 114 (Mo. App. E.D. 2021); *A.A.B. v. A.D.L.*, 572 S.W.3d 562, 569-70 (Mo. App. E.D. 2019); *McGaw v. McGaw*, 468 S.W.3d 435, 442-48 (Mo. App. W.D. 2015); and *D.S.K. ex rel. J.J.K. v. D.L.T.*, 428 S.W.3d 655, 660 n. 7 (Mo. App. W.D. 2013) ("Pursuant to *T.Q.L.*, an independent action for third-party custody is permissible."); *see also Bowers v. Bowers*, 543 S.W.3d 608, 616 (Mo. 2018) (citing *McGaw*, and stating that § 452.375.5(5)(a) "provides a basis for nonbiological parents to bring an action seeking child custody and visitation"); *Hanson v. Carroll*, 527 S.W.3d 849, 853 (Mo. 2017) ("This Court recognizes that, since *T.Q.L.* was decided, appellate courts have interpreted its holding to permit a nonbiological parent or third-party to initiate an independent

proceeding for third-party custody outside the parameters of a pending custody proceeding." (citations omitted)).

Smith properly alleged a cause of action for third-party custody under § 452.375.5(5)(a). She alleged that she "ha[d], for a substantial period and to a substantial degree, fulfilled the role of a primary parent" to the children, *Conoyer*, 562 S.W.3d at 397-98, and that she had done so with the agreement of the children's adoptive mother, Martinez. Smith also alleged that Martinez was unfit, that the welfare of the children required that Smith be granted custody and/or visitation, and that granting her custody and/or visitation was in the children's best interests. Under the caselaw discussed above, Smith adequately alleged an independent cause of action under § 452.375.5(5)(a).

Martinez cites to this Court's decision in *In re J.D.S.*, 482 S.W.3d 431 (Mo. App. W.D. 2016). *J.D.S.* held that a child's natural grandparent (the mother of child's natural father) could not file an independent action seeking third-party visitation under § 452.375.5(5)(a), after the conclusion of adoption proceedings in which another person was permitted to adopt the child. *J.D.S.* is distinguishable for multiple reasons. First, *J.D.S.* noted that, in an adoption proceeding, "the legal rights of a natural parent are completely abrogated" by operation of § 453.090, and that "[t]his statutory abrogation extends to grandparents." *Id.* at 440 (cleaned up). In this case, Smith was not a natural parent of the children, and therefore not subject to the statutory abrogation of parental rights at issue in *J.D.S.*

In addition, *J.D.S.* relied on cases holding that a party could not invoke § 452.375.5(5)(a) to seek third-party visitation *in an ongoing adoption*

*proceeding*. 482 S.W.3d at 439-40. In this case, however, Smith did not seek third-party custody and/or visitation in the adoption proceeding itself, but instead filed an independent action seeking third-party custody and/or visitation. Notably, our opinion in Smith's appeal of the adoption judgment specifically contemplated the procedural path Smith chose to follow: we observed that, "[o]nce the adoption is complete, a person may seek to obtain third-party child custody and visitation determinations authorized by law." *In re S.H.P.*, 638 S.W.3d at 532 n.8.

Further, in *J.D.S.*, the third party was only seeking visitation, not custody. This Court agreed with the child's parents that "Section 452.375.5 . . . only allows third-party visitation to be considered in conjunction with an ongoing custody hearing," and that the petition seeking third-party visitation "was filed as a separate action not as a motion within a custody proceeding." *Id.* at 439. Unlike in *J.D.S.*, in this case Smith <u>did</u> seek third-party custody by alleging parental unfitness and that the welfare of the children required it; she sought visitation only in the alternative. While the circuit court's judgment ultimately awarded only visitation, Smith's visitation rights were awarded "within a custody proceeding," not in stand-alone litigation seeking solely visitation. It is also significant that the circuit court's award of visitation implemented the parties' settlement of Smith's petition seeking custody. *J.D.S.* is inapplicable here.

Martinez also relies on a lengthy footnote in *In the Matter of Adoption of C.T.P.*, 452 S.W.3d 705, 720-21 n.33 (Mo. App. W.D. 2014), in which this Court expressed reluctance to interpret *T.Q.L.* as authorizing a stand-alone proceeding for third-party custody. As we later recognized in *McGaw*, however, the

12

discussion of the issue in *C.T.P.* was non-binding *dictum*. *McGaw*, 468 S.W.3d at 445. We stated that the discussion in *C.T.P.* "cannot excuse us from recognizing and following the holding of *T.Q.L.*," as required by Article V, § 2 of the Missouri Constitution. *Id.*

At oral argument, Martinez's counsel emphasized that in *Hanson v. Carroll*, 527 S.W.3d 849 (Mo. 2017), the Missouri Supreme Court held that a third-party could not prosecute an independent action under § 452.375.5(5)(a), following a guardianship proceeding in which letters of guardianship over a child were issued to another person. Martinez contended that the same result should apply here: an independent proceeding under § 452.375.5(5)(a) should not be permitted following a contested adoption proceeding.

*Hanson* is not controlling here, however, because – unlike in a guardianship proceeding – an adoption proceeding does not involve the determination of child custody issues. *Hanson* refused to permit the filing of an independent proceeding seeking third-party custody because it would interfere with the custody determination made in the earlier guardianship proceeding. The Court explained:

> Missouri courts have acknowledged child custody is one of the most common areas of law in which more than one court could properly have subject matter jurisdiction. In Missouri, the custody of a child may be adjudicated in at least five types of actions: (1) dissolution; (2) habeas corpus; (3) juvenile; (4) guardianship; and (5) paternity. Missouri courts have also recognized a circuit court legally errs when it enters a conflicting judgment or order with respect to a preexisting child custody order or judgment from another court.

> Here, Guardians were issued letters of guardianship as to Child. The judgment granting guardianship provided that Guardians

13

"have custody of [Child] with full power as provided by law."
Section 475.120.1 provides: "The guardian of the person of a minor
shall be entitled to the custody and control of the ward and shall
provide for the ward's education, support and maintenance."
Guardians, therefore, have control over the custody of Child, which
encompasses control over visitation by others like Grandparents.

. . . .

The plain language of section 452.375.5(5) is not applicable to
a situation in which a probate division previously has issued letters
of guardianship over the child or children at issue. . . . [I]n
situations such as this, when letters of guardianship have been
issued and a custody award as to a child already exists, parental
custody is not at issue.

*Id*. at 853-54 (cleaned up).

Unlike a guardianship proceeding, adoption proceedings do not decide

custody issues. As we explained in *C.T.P.*, 452 S.W.3d 705:

Chapter 453 does not authorize a trial court to determine
custody disputes, and makes no provision for the entry of child
custody or visitation orders other than the transfer of custody of a
child to proposed adoptive parents to facilitate adoption as
permitted by section 453.110. . . . [A]n adoption proceeding is not a
child custody determination wherein competing custodial rights to a
child are weighed and determined by the court. Instead, an adoption
proceeding requires a court to determine whether the creation of a
parent-child relationship is in the best interests of a child. . . .

Consistent with this observation, sections 452.700 to 452.930,
the Uniform Child Custody Jurisdiction and Enforcement Act
("UCCJEA"), . . . defines a "child custody proceeding" wherein "child
custody determinations" may be made in pertinent part as:

[A] proceeding in which legal custody, physical custody, or
visitation with respect to a child *is an issue*. The term includes
a proceeding for divorce, separation, neglect, abuse,
dependency, guardianship, paternity, termination of parental
rights, and protection from domestic violence *in which the
issue may appear*.

14

Section 452.705(4) (emphasis added). Notably absent from this definition are adoption proceedings controlled by sections 453.005 to 453.170, wherein no authority is vested in a court to enter custodial or visitation orders of the nature described in section 452.705(3). In fact, section 452.710(1) of the UCCJEA expressly provides that "Sections 452.700 to 452.930 shall not govern . . . [a]n adoption proceeding."

*Id.* at 716-17 (cleaned up).

Thus, unlike the prior guardianship proceeding at issue in *Hanson*, the prior adoption proceeding which occurred in this case was not a "child custody proceeding" "wherein competing custodial rights to a child [we]re weighed and determined by the court." *Id.* at 716. Accordingly, the rationale of *Hanson* – that an independent action under § 452.375.5(5)(a) cannot be used to modify orders entered in an earlier child custody proceeding – has no application here.

**B.**

As a separate matter, we question whether Martinez has the right to raise this issue now, even if her first Point is properly read as raising an issue of standing. "Standing is a necessary component of a justiciable case that must be established prior to adjudication of a case's merits." *Byrne & Jones Enterps., Inc. v. Monroe City R-1 Sch. Dist.*, 493 S.W.3d 847, 851 (Mo. 2016) (citing *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. 2013)). Like issues of subject-matter jurisdiction, "[a] party's '[l]ack of standing cannot be waived.'" *Hink v. Helfrich*, 545 S.W.3d 335, 342 n.5 (Mo. 2018) (quoting *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. 2002)). Nevertheless, although lack of standing and lack of subject-matter jurisdiction are non-waivable, a litigant is entitled to <u>one</u> – but <u>only</u> one – opportunity to litigate these threshold issues.

It is well established that a litigant cannot waive defects in subject matter jurisdiction, and therefore is guaranteed *one* opportunity to

15

raise such issues; however, nothing gives a litigant a right to repeatedly raise the same arguments – even if jurisdictional – in perpetuity.

*Cain v. Porter*, 309 S.W.3d 387, 390 (Mo. App. W.D. 2010); *see Allison v. Allison*, 253 S.W.3d 91, 94-95 (Mo. App. S.D. 2008) (holding that wife could not raise a claim that the circuit court lacked subject-matter jurisdiction over a dissolution action in a motion to set aside the dissolution judgment under Rule 74.06(a), when she "had a full and fair opportunity to litigate the issue of subject matter jurisdiction . . . in the original proceedings").

In this case, Martinez moved to dismiss Smith's petition based, in part, on her claim that Smith lacked standing to prosecute an independent action under § 452.375.5(5)(a). The circuit court denied that motion. After the circuit court heard and rejected Martinez's standing argument, she stipulated to a visitation schedule for Smith, and asked the circuit court to incorporate that visitation schedule into the court's judgment. In these circumstances, we question whether Martinez was entitled to raise her standing argument again, after the circuit court entered the judgment Martinez asked it to issue.

Point I is denied.

## II.

Martinez's second and third Points argue that the circuit court erroneously held that she had consented to the entry of the judgment. She argues that "a consent judgment must be based on a valid agreement in which there is a meeting of the minds as to the substance of the judgment," and that in this case, she never agreed to the terms of the proposed judgment prepared by Smith's counsel.

16

Martinez cites to caselaw involving separation agreements in marital dissolution proceedings. Those cases hold that, in order for a separation agreement to be enforceable, "the parties must be in agreement when it is presented to the trial court. If the parties are not in agreement at the time that the separation agreement is presented to the trial court, the trial court cannot approve it, and the agreement was never enforceable." *Freeland v. Freeland*, 256 S.W.3d 190, 194 (Mo. App. E.D. 2008) (citations omitted); *see also*, *e.g.*, *Reynolds v. Reynolds*, 109 S.W.3d 258, 279 (Mo. App. W.D. 2003); *Wakili v. Wakili*, 918 S.W.2d 332, 339 (Mo. App. W.D. 1996); *O'Neal v. O'Neal*, 673 S.W.2d 126, 127-28 (Mo. App. E.D. 1984). Martinez argues that the visitation schedule to which she agreed could not be enforced, because she objected to the proposed judgment drafted by Smith's counsel, seven weeks after the proposed judgment was submitted to the circuit court.

Martinez' argument is misdirected. Although a docket entry characterized it as a "Consent Judgment," the circuit court did not enter its "Judgment and Order of Visitation" based on Martinez' purported agreement to the proposed judgment drafted by Smith's counsel. Instead, the circuit court entered its judgment based on the court's "review[ ] of the settlement of the parties with supporting pleadings" – namely, the "Affidavit of Petitioner and Respondent Requesting Entry of Judgment of Third Party Visitation," and the "Joint Stipulation for Visitation." Based on its review of the parties' joint submissions, the court found that Smith and the children "have a significant familial bond"; that the welfare of the children required that Smith be awarded visitation; and that the parties' proposed visitation schedule was in the children's best interest.

Thus, the relevant *agreement of the parties* in this case is the agreement to a visitation schedule documented in the Affidavit and Joint Stipulation, not the proposed judgment which Smith's counsel later prepared to reflect the circuit court's *approval* of the parties' agreement. Martinez makes no argument that she was not in agreement with the terms of the Affidavit and Joint Stipulation when they were submitted to the court the day before a scheduled trial. Both documents bear Martinez's notarized signature, and she raised no objection to the visitation schedule contained in those documents until almost two months later. In the joint Affidavit which she executed, Martinez joined with Smith in "request[ing] that the Court enter a Judgment of Visitation based upon" the visitation schedule to which the parties had agreed.

The caselaw on which Martinez relies requires only that the parties be in agreement *when a settlement is presented to the court for approval*. These cases hold that "the legislature intended that the husband and wife jointly, while in agreement, come before the court and present their proposed settlement for the court's approval." *O'Neal*, 673 S.W.2d at 128. The critical issue is whether the parties were in agreement "[a]t the time the separation agreement was first presented to the trial court." *Id.*; *see also Reynolds*, 109 S.W.3d at 279 (pointing to "the first time the agreement was presented to the court"). A focus on the time when the parties present their settlement to the court for approval makes sense. At that point, the parties have bound themselves to an agreed disposition, subject to only one contingency: approval by the court. When the parties present their agreement to the court and ask the court to approve it, they relinquish any right to unilaterally withdraw from the agreement. In addition, it is frequently the case

18

that a circuit court will not act upon a motion for approval of a settlement at the moment the agreement is first presented; the court may take the matter under advisement in order to review the relevant record and the form of the agreement, or simply due to the press of other business. We would be reluctant to adopt a rule which permitted parties to renege on an agreement which they had freely entered, and which they had freely asked a court to adopt, while the court considered whether to accede to the parties' joint request.

Here, Martinez and Smith "jointly, while in agreement, c[a]me before the court and present[ed] their proposed settlement for the court's approval." *O'Neal*, 673 S.W.2d at 128. They were in agreement when the stipulated visitation schedule "was first presented to the trial court." *Id.* The circuit court did not err in relying on the parties' agreed visitation schedule in entering its judgment awarding third-party visitation to Smith. The circuit court, in its discretion, was entitled to consider Martinez's later objections in deciding whether the agreed visitation schedule was in the children's best interests; but her belated objections did not have the effect of nullifying the agreement as a matter of law.

At oral argument, Martinez's counsel highlighted a provision of the Joint Affidavit stating that, rather than proceeding to trial, the parties had "instead agreed upon entering *the terms of the Judgment being submitted with this Affidavit*." (Emphasis added.) Martinez's counsel argued that the emphasized language indicated that Martinez was not bound until a proposed judgment to which all parties had agreed was submitted to the court (something which never happened). We disagree. The emphasized language can reasonably be read to

refer to *the substantive terms to be incorporated into the court's Judgment* – namely, the agreed visitation schedule contained in the parties' Joint Stipulation. The emphasized language did not unambiguously require the parties to agree to *the form of the Judgment itself.*  This is supported by a later provision of the Affidavit, in which "[t]he parties request[ed] that the Court enter a Judgment of Visitation based upon the pleadings and affidavit filed herewith."

The circuit court's judgment adopted, verbatim, the visitation schedule to which the parties had agreed.  The judgment contains additional provisions not reflected in the parties' agreement, including provisions addressing future relocations by the parties, alternative dispute resolution, and remedies in the event of non-compliance and enforcement action.  Martinez makes no objections to these additional provisions, which are relatively standard in a judgment addressing issues of child custody and/or visitation.  Martinez also does not argue that the circuit court lacked substantial evidence to make the key findings in the judgment: that Smith had "a significant familial bond" with the children; that visitation with Smith was necessary to promote the welfare of the children; and that the agreed visitation schedule was in the children's best interests.

Finally, we note that Martinez does not challenge the circuit court's entry of judgment based solely on the parties' joint written submissions, an exchange of e-mail correspondence, and an off-the-record telephone conference.  While Martinez does not argue the point, we observe that the better practice in cases like this one would be to hold an on-the-record hearing at which both parties testify, under oath, to their understanding and acceptance of the terms of the

20

agreement. Creating such an evidentiary record is particularly important where one or both parties are unrepresented by counsel.

Points II and III are denied.

## III.

In her fourth Point, Martinez challenges the circuit court's judgment granting Smith's family access motion. The family access motion sought to enforce Smith's rights under the Judgment and Order of Visitation. Martinez's argument concerning the family access judgment is based solely on her contention that the circuit court erroneously entered the underlying visitation judgment. Because we have rejected Martinez's challenges to the Judgment and Order of Visitation in §§ I and II, above, Point IV is likewise denied.

## IV.

On the morning of oral argument, Smith filed a Motion for Sanctions under Rule 84.19, contending that Martinez's appellate arguments were frivolous, and were intended only to unnecessarily prolong the litigation. As the discussion above in §§ I and II demonstrates, the issues raised by Martinez are far from frivolous, even though we find Martinez's arguments to lack legal merit. Frankly, if anything were to be characterized as "frivolous," it would be Smith's sanctions motion. *See C.T.P.*, 452 S.W.3d at 722 n.35 (holding that an appeal raising similar issues was "plainly not frivolous. To argue to the contrary in a Rule 84.19 motion was itself frivolous and resulted in a waste of judicial resources."). Smith's Motion for Sanctions is denied.

## Conclusion

We affirm both judgments entered by the circuit court: the judgment awarding Smith third-party visitation rights; and the separate judgment granting

21

her family access motion.  Smith's Motion for Sanctions under Rule 84.19 is denied.

_____
Alok Ahuja, Judge

All concur.